55  387
55  398

## Jefferson D. Blakeslee *vs.* Henry Tyler.

New Haven Co., June T., 1887.  Park, C. J., Carpenter, Pardee, Loomis and Beardsley, Js.

In 1817 *C* and others petitioned the selectmen of a town for the laying out of a highway between certain points.  A lay-out of the road was made by the selectmen, the road to be incumbered by three gates, and being described as a "pent road," and as laid out at the joint expense of *C* and the town, a certificate of *C* being appended that he accepted the location and conditions.  In 1819 the town passed a vote approving the laying out of the "pent highway," provided *C* should pay half the expense of it, and the town accounts showed a payment of half the expense by the town.  Held—

1. That the road thus laid out was in law a highway.
2. That it is questionable whether the selectmen had power to impose the incumbrance of the gates upon it.
3. That a land owner who, with those from whom he derived title, had by common consent and without a claim of right kept up bars across the road for sixty years, had not acquired a prescriptive right to keep them there.  Whether such a right could have been acquired by adverse user in any circumstances : *Quære.*  The court inclined to the opinion that it could not.
4. That it was not necessary that the record of the lay-out should show that the selectmen found the road to be of common convenience and necessity, such a finding being involved in their action in laying it out.
5. That it would be conclusively presumed, after such a lapse of time, that damages had been paid to the owners of land taken for the road.

[Argued June 21st—decided July 15th, 1887.]

QUI TAM action to recover a penalty for placing an obstruction upon a public highway, brought under Gen. Statutes, p. 253, sec. 1. The action came, by appeal from the judgment of a justice of the peace, to the Court of Common Pleas in New Haven County, and was tried to the court before *Pickett, J.* The following facts were found by the court:

A long, high range of hills in the town of North Branford, known as Totoket Mountain, runs northerly and southerly between the societies of Northford and North Branford, Northford being on the westerly and North Branford on the easterly side of the mountain.

An old, well-traveled highway runs southerly from Northford, at some points near and at other points more distant from the westerly base of the mountain, and around its southerly end, to North Branford.

For fifty years or more, prior to 1818, people who had occasion to haul wood or charcoal from their lands on the mountain or the westerly side thereof, were accustomed to use a cart path which commenced on the old highway, at a point about eighteen rods south of Peter Tyler's house, and ran easterly to a place known as the "Gulf" across the lands of private owners, to the lands of those owners who had occasion to haul wood and charcoal from the mountain and vicinity to the ancient highway.

The plaintiff, in support of his claims, offered in evidence a copy of a petition for a highway dated September 20th, 1817, signed by Calvin Eaton and others, addressed to the selectmen of the town of Branford, (the present town of North Branford in which the highway in question is situated, being then a part of that town,) the petition stating that there was a great public necessity for a highway from the Northford road and describing the route of the present way. The plaintiff also offered in evidence a lay-out of the way in question by the selectmen of Branford, dated December 18th, 1818, which was in the following terms: "Location and description of a pent road from a point near the Elwell house, so called, in the Gulf, to Peter Tyler's house in Northford, beginning at the former place"—(here

giving a survey of the route by courses and distances).
" The above described road is laid out two rods in width
uniformly throughout, and is to be incumbered by three
gates only, one at the highway near Peter Tyler's house,
one near the Elwell house, so called, in the Gulf, and one in
the intermediate space, on the division line between Na-
thaniel T. Cook and Malachi S. Tyler, seventy rods and
fifteen links from the gate in the Gulf. Said gates may be
moved by a vote of the town. Said pent highway is laid
out on the petition of Calvin Eaton, of North Haven, one
half at his expense, and one half at the expense of the town
of Branford." This was signed by the selectmen, and the
following certificate appended to it:—" I hereby acknowl-
edge my approbation and acceptance of the location and
conditions of the above described pent highway. Theophi-
lus Eaton for Calvin Eaton." The plaintiff also offered in
evidence the following vote of the town :—" At an adjourned
town meeting held on the 5th day of April, 1819, the loca-
tion and description of a pent highway, laid out by the
selectmen, from Elwell's place, so called, near the Gulf in
Northford, to the highway in Northford, near Peter Tyler's
dwelling house, was laid before the meeting. *Voted*, That
said pent highway is approved and established, provided
that Mr. Calvin Eaton pay one half of the expense, accord-
ing to his agreement with the selectmen." Also a copy of
an account upon the record of expenses of the town in the
town clerk's office, which contained the following item :
" Expense of pent road, Northford—one half damages and
expenses laying out—$33.74.

To the introduction of these copies in evidence, as a
whole, and to each of them separately, the defendant ob-
jected, on the ground that they did not prove or tend to
prove the lay-out or the existence of a public highway,
within the meaning of the statute, upon which the suit was
brought; and also because it did not appear that any dam-
ages had been assessed or paid to the several proprietors of
lands through which the pent road was laid out; and that
the lay-out was void for uncertainty, as it did not describe

the easterly terminus of the road with a sufficient degree of certainty; that that terminus was not located by anything contained in the copies, and that there was no indication therein as to the direction of the terminus from the Elwell house, referred to in the lay-out.

The court overruled these objections and admitted the copies in evidence; to which the defendant's counsel excepted.

The pent road, described in the complaint and claimed to have been obstructed by bars, was laid out to intersect a cart path, where the bars in question were located, and where posts for bars had been located and maintained, and in which bars were kept during the pasture seasons, for more than fifty years prior to 1818.

Since the lay-out and establishment of the pent road in 1818 and 1819, the bars or poles substituted therefor have been maintained and kept up in the summer, and occasionally in the winter, by Peter Tyler, and after his death by his son, Malachi S. Tyler, who inherited the adjacent land, and next by the defendant, the son of Malachi, until 1879, when they were thrown down, and not replaced till the spring of 1885, when the defendant returned from Wallingford, where he had resided about two and a half years.

From the time of the acceptance and establishment of the pent road in 1819, the same has been free to all persons desiring to use the same, but has been mostly used for farm purposes and the cartage of wood and charcoal, and occasionally by persons desiring to ride or drive by a short but rough road across the mountain, to or from the northerly part of North Branford.

Ever since the acceptance and establishment of the pent road in 1819, fences have been maintained on both sides of the same, from the old highway to the bars, and easterly therefrom a fence has generally been maintained on the southerly side, but none on the northerly side of the road, and the land so unfenced has during all that time been occupied by the defendant, his grantors and ancestors, for

pasturage, and the bars have been convenient and useful to those using the land for that purpose.

From 1819, during the life of Peter Tyler, he kept up the bars by the common consent, except in one instance, of the people who had occasion to pass over the road, and not under any claim that he had a right so to do, and Malachi S., son of Peter and next owner of the land easterly of the bars, kept up the same, but not under a claim of right so to do as against persons passing to and fro over the pent road.

The defendant, being in occupancy of the land easterly of the bars, kept up the same or substitutes therefor, in the same manner as his ancestors and grantors had done, till 1879, when he put up new posts and kept bars in them at all seasons, under a claim of right so to do, then first made known, till they were thrown down, and so remained till 1885, when they were replaced by the defendant on his return from Wallingford, and kept up under a claim of right till May 24th, 1886, when they were taken down by the plaintiff and replaced by the defendant and wife under a claim of right to keep up the same, and so remained until the bringing of this suit.

The pent road has been maintained first by the town of Branford and afterward by the town of North Branford, and from time to time repaired as a public highway from the time it was laid out to the time of the bringing of this suit, and it does not appear that the road has ever been repaired by special vote or order of either town.

In 1874 and subsequent thereto the defendant made application to the selectmen of North Branford, for permission to maintain the bars, but without success.

Upon the foregoing facts the defendant claimed:

1. That the pent road was not a public highway within the meaning of the statute under which the suit was brought.

2. That the lay-out was void for uncertainty, as the easterly terminus was not defined and located, nor was the location of any line, center or otherwise, given.

3. That the pent road had never been legally laid out, as it was not found that it was of either private or public convenience or necessity, nor that any damages were ever assessed or paid to the proprietors of the land through which the road was laid out.

4. That the putting up of the bars was not a violation of the statute under which the suit was brought.

5. That the fact that the bars continued to remain after the lay-out in 1818 down to 1879, was evidence sufficient to prove an agreement between Peter Tyler and the adverse parties, under which the bars were to be kept and maintained then as before.

6. That it did not appear that the road had ever been opened at the point where the bars had been kept and maintained before and since the lay-out in 1818.

7. That the word "highway" in the statute in question does not mean a pent road, but a public highway, laid out for public convenience and necessity.

8. That the public acquiescence in the continuous maintenance of the bars for so long a period, was *primâ facie* evidence that the public had released any supposed right to have the bars removed.

The court overruled all of these claims, and rendered judgment for the plaintiff. The defendant appealed to this court.

*T. E. Doolittle*, for the appellant.

1. This is a *qui tam* action brought on a penal statute. Gen. Statutes, p. 253, § 1. Therefore it is to be construed strictly. *State* v. *Brown*, 16 Conn., 57 ; Sedgw. on Stat. Law, 280. The word "highway" as used in this statute does not mean a "pent road" upon which are placed obstructions, such as gates and bars, by the authority laying it out. The so called lay-out, signed by the selectmen, December 18th, 1818, begins as follows: "Location and description of a pent road, from a point, etc." And so in every instance in the lay-out by the selectmen, and in the vote of the town, it is called either a pent road or a pent highway. The word

" highway " does not mean a private way. The statutes clearly point out and recognize the distinction between a highway and a private way. Gen. Statutes, p. 235, § 28, is as follows : " The selectmen of each town may lay out necessary highways or private ways," one for public convenience, the other for private convenience, that is, for all persons who may have occasion to use it, incumbered with gates and bars as it may be. The following sections of the Gen. Statutes, clearly show that the word " highway " does not include a private way : page 236, §§ 29, 33 ; page 237, § 35 ; page 239, § 46 ; page 234, § 19 ; page 235, §§ 24, 25, 26 ; page 324, § 31 ; page 488, § 3 ; page 509, § 5. This highway has never been laid out as, or found to be, of public convenience and necessity. Very little light would be shed upon this case by an examination of the statutes of other states, yet in *Commonwealth* v. *Low*, 3 Pick., 408, it was held to be no violation of a statute to put a fence across a private way. See also *Wolcott* v. *Whitcomb*, 40 Verm., 40.

2. The pretended lay-out is void for uncertainty. It has no initial point. " Location and description of a pent road from a point near the Elwell house in the Gulf." How near the Elwell house, and in which direction, is a matter of not even conjecture. It is not possible from that description to make even a wild guess where the starting point is. *Town of Windsor* v. *Field*, 1 Conn., 279 ; *Reynolds* v. *Reynolds*, 15 id., 83.

3. The pent road has never been legally laid out, as it has never been found by any authority, either selectmen or town, that it was of either private or public convenience or necessity.

4. No damages were assessed to any person, and none were ever received by any person. The road has never been opened at the point where the bars have been maintained more than fifty years prior and subsequent to the laying out of the pent road in 1818. Peter Tyler probably consented to waive some claim and kept his bars up; at all events he kept them up and his heirs for more than sixty years after 1818, and if the public ever had any right to have

this pent road opened, they acquiesced during this long period in the maintenance of the bars at this point and lost their right if they ever had any. Angell on Highways, § 274, *note*; *Beardslee* v. *French*, 7 Conn., 125; *Brownell* v. *Palmer*, 22 id., 119, 121; *Cady* v. *Fitzsimmons*, 50 id., 214.

*W. B. Stoddard* and *S. C. Loomis*, for the appellee.

BEARDSLEY, J. This is a *qui tam* action, brought upon the statute against nuisances. The statute is as follows:—
"If any person shall place, or suffer to remain, anything in a highway, or dig up the ground therein, by which the passage of travelers shall be obstructed or endangered, or the highway be incumbered, the same shall be deemed a common nuisance," etc. Gen. Statutes, p. 253, § 1.

It was admitted that the defendant obstructed the way in question by placing bars across it, but the parties were at issue upon the question whether such way was a highway within the meaning of the statute quoted. The plaintiff claimed that it was laid out as such in the year 1819, and offered in evidence a petition of Calvin Eaton and others to the selectmen of the town of Branford for a highway from the Northford road, etc., dated the 20th of September, 1817, and a survey and lay-out by the selectmen of a way between the points named in the petition, to be incumbered by three gates, one at each end and one intermediately, and described in the lay-out as a pent road, and again as a pent highway. It is stated in the lay-out that "said pent highway" is laid out at the joint expense of Calvin Eaton and the town of Branford, and appended to the lay-out is a certificate by Calvin Eaton of his acceptance of the location and conditions of the above described "pent highway." The plaintiff also offered in evidence a vote of the town of Branford, passed April, 1819, approving this "pent highway, provided that Calvin Eaton pays one half the expense of it," and the following extract from the town records: "1818, 1819—Expense of pent road, Northford, half damages

and expense laying out—$33.74. It is found that the road so laid out is the one in question.

The defendant objected to the lay-out, claiming that it was void for uncertainty respecting the eastern terminus of the road. The objection is unfounded. By the survey the eastern initial point is fixed near Peter Elwell's house, and thence the road is to run by given courses twenty four rods to a heap of stones. It is apparent that by running the line back on the given courses, from the heap of stones, the place of beginning could be accurately fixed.

The defendant claims that it does not appear that the selectmen found the road to be of common convenience and necessity. Such a finding in terms is unnecessary, as it is involved in the action of the selectmen in laying it out. *Townsend* v. *Hoyle*, 20 Conn., 7.

The defendant also claims that it does not appear that damages have been paid to the owners of land taken. The court has failed to make any specific finding on this question, but it appears that Eaton agreed to pay one half the damages, which he has presumptively done, in view of the fact that the road has been maintained by the town, and used for nearly seventy years, and the extract from the records in evidence that the town has paid the other half. If there were no evidence on the subject, such payment should be conclusively presumed after such a lapse of time. The court finds, as already suggested, that "since the establishment of said pent road in 1819 the same has been free to all persons desiring to use it, but has been mostly used for farm purposes, and for the carting of wood and charcoal, and occasionally by other persons," and that "it has been maintained by the town and repaired as a public highway from the time when it was laid out and established."

Upon these facts the defendant claims that the road was not a highway within the meaning of the statute referred to, by reason of the gates upon it, erected and maintained by authority of the town. Pent roads or pent highways are not provided for by the statutes of this state. Provision is made for two kinds of ways only—highways and private

ways; one for public and the other for private use. The defendant suggests that this way is a private one, but there is nothing in its lay-out or history to characterize it as such. The selectmen are now empowered to authorize the erection of gates or bars across private ways, (Gen. Statutes, p. 234, sec. 19,) but the statute giving them this power was first passed in 1822, several years after this road was laid out.

It is clear that the selectmen attempted to lay out this road as a highway, and if they failed to do so it is because of the provision for gates upon it. Irrespectively of such lay-out, the use which has been made of the road by the public for nearly seventy years, and the action of the town regarding it, would afford sufficient evidence that it is a highway, unless they are controlled by the fact of the gates. It is apparent that the gates were authorized merely to save the expense of fences next to the road, upon the idea that in view of the kind and amount of travel likely to pass over it they would not be a serious impediment to it. If they were so in fact, a question might arise whether the selectmen or town, acting as they do in behalf of the state in the laying out and maintenance of highways, would have power to authorize them. But assuming that in the present case they had such power, the character of the road as a highway was not qualified by the authorization of gates upon it, and those using it were entitled to the protection of the statute against unauthorized obstructions upon it. Angell on Highways, § 24. In *Town of Whittingham* v. *Bowen*, 22 Verm., 317, the question was whether a pent road authorized by the statutes of Vermont was a highway, and REDFIELD, J., says: " Those highways which are permitted to be pent are as much public highways as any others, free to all persons who may have occasion to pass along them."

The defendant claims that he has acquired by prescription the right to maintain the bars complained of across this highway. But the finding is conclusive against him on this point. It is found that he and his ancestors from whom he has derived title to his land adjoining the highway, have

maintained bars at the place in question during the summer and sometimes in winter, from 1818 or 1819 down to 1879, but that the bars were so kept there by common consent, and without any claim of right so to do, and that in 1874 the defendant applied to the selectmen for permission to keep the bars there, which was not given. Under such circumstances, if the highway had been individual property, no presumption of a grant of the right to maintain the bars would arise, (2 Greenl. Ev. § 539), while in the case of a public highway it is very questionable whether such a right could be obtained by adverse user in any circumstances. We incline to the opinion that it could not. 2 Dillon on Municp. Corp., §§ 530 to 533. " A nuisance however long continued never ceases to be abatable by reason of its antiquity." Angell on Highways, § 274.

There is no error in the judgment appealed from.

In this opinion the other judges concurred.