JOHN M. GREIST *vs.* GUSTAVE X. AMRHYN ET ALS.

Third Judicial District, Bridgeport, October Term, 1907.

HAMERSLEY, HALL, PRENTICE and THAYER, Js.

Exceptions taken to findings of fact by the trial court will not be considered on appeal, unless the evidence upon which they are based is certified.

A highway may be extinguished by direct action through governmental agencies, in which case it is said to be discontinued; or by nonuser of the public for a long period of time with the intention to abandon, in which case it is said to be abandoned.

The methods of discontinuing a highway through all governmental agencies except that of the General Assembly, are prescribed by law and must be strictly pursued.

In an action against the superintendent and members of the board of park commissioners of New Haven, to recover damages for entering upon the alleged premises of the plaintiff and tearing down certain gates thereon, the parties were at issue as to whether the city of New Haven had any right of way over the *locus*, which was once a highway in the town of Woodbridge and extended along the westerly side of a large tract of land known as Woodfield, forty-five acres of which in the southwest corner the city claimed to own by devise under a will probated in 1828. The plaintiff contended that the old highway had been legally discontinued. In respect to this it appeared that in 1840 the inhabitants of Woodbridge, in town meeting, voted to accept a proposition of two landowners, *C* and *H*, which called for the opening of a new highway and directed the selectmen to give these landowners, so far as it could be done without discommoding the proprietors of Woodfield, a quitclaim deed of the old road, which was to be continued as a pentway, secured with gates and bars at the expense of *C* and *H*. *Held:*—

1. That inasmuch as positive action by the selectmen was essential to discontinue the highway (Statutes of 1838, pp. 344, 346), the vote of the town, even if intended to work a discontinuance, was ineffective for that purpose.

2. That in the absence of a finding that the selectmen had taken definite and formal action to discontinue the old road, it could not be said as matter of law that it had been legally discontinued.

3. That even if the selectmen had in fact voted to discontinue the highway without providing for its use as a pentway by the proprietors of Woodfield, such action would not have conformed to the vote above recited, and lacking any other "approbation of the town," would have been insufficient for that reason.

The discontinuance of a highway is the result of judicial investigation and determination, and the selectmen, who act as agents of the law for this purpose, can exercise only such powers as are conferred upon them by statute. .

In early times highways were allowed to be pent.

The defendants further contended that the *locus in quo*, if not a highway, was a private way appurtenant to the forty-five-acre tract devised to the selectmen of the town of New Haven in 1828, as successor to which the city claimed ownership by virtue of the Consolidation Act of 1897. The trial court ruled, however, that inasmuch as the land devised was "to be used and improved for the benefit of an almshouse," the common council of the city had no power or authority to turn it over to the park commission for park purposes, as it attempted to do in 1903; and that the defendants, not having been engaged in any business connected with the almshouse when they tore down the plaintiff's gates, could not take advantage of the existence of a private right of way. *Held* that in so ruling the trial court erred: that the way having been closed by locked gates which prevented all access to the dominant estate for any purpose, the defendants had the right, and it became their duty, simply as custodians of the city's land, to protect it and its appurtenant ways from encroachment.

One who is in possession of premises to which an easement is appurtenant, is not obliged to prove title before he can remove obstructions of the easement as a nuisance.

Quitclaim deeds are admissible as links in a chain of title, but standing alone and without supplementary proof of the grantor's title, can have little if any weight.

If it does not appear whether such deeds were or were not supplemented by further evidence, it cannot be said that the trial court erred in considering them.

Argued October 22d—decided December 17th, 1907.

ACTION in the nature of trespass *quare clausum fregit*, brought to and tried by the Superior Court in New Haven County, *Case, J.;* facts found and judgment rendered for the plaintiff, and appeal by the defendants. *Error and new trial ordered.*

In 1904 the plaintiff enclosed a large tract of uncultivated woodland, about one mile square, situated partly in New Haven and partly in the towns of Woodbridge and Orange. The land had been from the earliest times owned and occupied by a large number of different owners in severalty, these different holdings not being fenced in but designated

by stones and stakes at the corners·thereof.    Said tract had been known as " Woodfield " and was sometimes called " Common Field."    The different owners used the land for supplying themselves with wood.    One of the owners prior to 1821 was Elijah Thompson, whose lot was at the southwest corner of the tract.    On the westerly side of the tract in the town of Woodbridge there was originally an old road known as the Dogman road.    Throughout the tract there were cart paths used by the different owners in reaching their respective tracts.    One of these, called in the answer and finding the Cavan road, opening from Fountain Street in Westville at the northeast corner of the tract, extended entirely through it in a southwesterly direction, passing through said Thompson land, to said Dogman road at the southwest corner of the tract.    This was a general path used by the different proprietors, from which they branched off when necessary to reach their respective tracts.

By his will dated April 26th, 1821, and probated in 1828, said Thompson made the following devise relating to said Thompson lot: " I give and devise to the selectmen of the town of New Haven and their successors in office forever to be used and improved for the benefit of an almshouse in said town, a tract of woodland containing about forty-five acres, situated in said New Haven at the southwest corner of the common field known by the name of Woodfield . . . reserving for my children, Sheldon, Rebecca, Mehitable and Grace, a right to improve each one fifth part of said tracts of land during their natural lives and for the children of my son William E. Thompson deceased, the remaining fifth part during their lives—also for my grandchildren Anna Bradly, Elizabeth, Jane and Edward Buddington each $\frac{1}{5}$ of $\frac{4}{5}$ parts of said tracts during their lives."    Some of said children and some of said grandchildren of said Thompson subsequently conveyed their interests so reserved to them by the will, to grantees who afterward conveyed the same to the town of New Haven.    Whether these children and grandchildren, or any of them, are still living, does not

appear. Rights reserved by the will are still owned in part by the heirs of said Thompson. The selectmen of New Haven and the superintendent of the almshouse thereafter entered upon the Thompson lot and cut and carted wood therefrom over the ways mentioned.

In 1840 the town of Woodbridge voted that "the proposition of Messrs. Clark and Hotchkiss to have a highway opened from near widow Sherman's to near the dwelling house of said Eli Hotchkiss, viz.: That the said gentlemen give the land and fence the same so far as their land goes and that the selectmen give them a quit-claim of the old road so far as can be done without discommoding the proprietors of the Westfield Woods, or common field, so called, except its being continued as a pentway which shall be secured at the expense of said Clark and Hotchkiss with well erected gates or bars and that the selectmen open the road as proposed road as soon as may be in substance as laid down on a map this day exhibited to the inhabitants of this town of Woodbridge." The old road referred to in the vote was said Dogman road, and the Westfield Woods was said Woodfield. The new road proposed did not afford access to said Woodfield. It did not appear that the deeds referred to in the vote were ever in fact given by the selectmen, but it did appear that the new road referred to was constructed and is now in existence, and ever since that date has been used as a highway in place of the old road; and it is found that the latter was fenced up by direction of the selectmen and has never been used by the general public or by anybody except the owners of the tracts of land in said Woodfield, with knowledge that it had been discontinued as a highway since the new road was built in 1840.

The town and city governments of New Haven were consolidated in 1897. By the Special Act so consolidating them, all property belonging to the town of New Haven became vested in the city, and the powers and duties of the selectmen concerning matters affecting defective and dependent classes was devolved upon the board of charities

and correction of the city, and the court of common council of the city was given power to pass orders for the management, regulation and control of all city property.

Beginning in 1901 and prior to December 12th, 1904, the plaintiff had acquired by purchase from the several owners all of the land included in said Woodfield except seven small pieces, one of which was the Thompson tract, and had also acquired other adjoining land to the west in the towns of Orange and Woodbridge, and the land over which the old Dogman road originally passed. After such purchase, without objection from any one, he erected a fence around the entire tract with gates placed for his own convenience at said old Dogman road and said Cavan road. He caused said gates to be locked, but gave keys to all persons having lawful occasion to pass into said tract who desired such keys.

In September, 1903, the aldermen of the city of New Haven passed the following order: "Ordered, that the tract of land known as Thompson's Woods be turned over to the park commission for park purposes." On December 12th, the defendant Amrhyn, who was superintendent of parks of the city of New Haven, by direction of the other defendants, who were the park commissioners of the city, entered upon the land of the defendant and removed said gates. He entered solely for the purpose of removing the gates, and without malice or intention to unnecessarily injure the plaintiff's property. These acts were admitted by the defendants in their answer, and justified upon the ground that said Cavan and old Dogman roads were public highways, or, if not highways, were private ways appurtenant to the Thompson land; that the defendants as park commissioners had the custody of said land for the city, and removed the gates as obstructions thereto. The court held that neither of the roads was a highway at the time of the alleged trespasses; that the devise of the Thompson land and the restrictions imposed thereon by the testator as to the use of the property remained effective, and excluded any general public use or occupation of the property

or its appropriation for park purposes; and that the order turning it over to the park commission for park purposes was without authority and of no effect.

*Leonard M. Daggett,* with whom was *James K. Blake,* for the appellants (defendants).

*William H. Ely* and *William F. Alcorn,* for the appellee (plaintiff).

THAYER, J.   The court held that the Cavan road was not and never had been a highway, and no question is raised as to the correctness of that conclusion; but the correctness of the court's conclusion that the old Dogman road had been discontinued as a highway, and the correctness of its finding of facts upon which that conclusion is founded, are raised by the appeal.   As the evidence upon which the exceptions to the findings of fact are based is not certified, those exceptions cannot be considered.

Do the facts found warrant the conclusion of the court that the old Dogman road had been discontinued?   A highway may be extinguished by direct action through governmental agencies, in which case it is said to be discontinued; or by nonuser by the public for a long period of time with the intention to abandon, in which case it is said to be abandoned.   The length of time during which such nonuser must continue on the part of the public, before the highway can be presumed to be abandoned, has not been determined in this State by statute or judicial decision.   It must be a long time.   The methods of discontinuing a highway through governmental agencies, except when the General Assembly acts, are prescribed by law and must be strictly pursued.   When the agencies thus vested with the power have so acted, the highway becomes discontinued immediately.   While the finding contains certain facts from which some inference might be drawn of an abandonment of the old Dogman road by the public between 1840 and the date of the alleged trespasses, it is

apparent from the whole finding and from the language in which the court's conclusion is stated, that it held that upon the facts found there was a legal discontinuance of the highway in 1840. It is found that the owners of the Woodfield lands, who were the only persons who traveled the road after the vote of the town mentioned in the statement of the case, used it with full knowledge that it had been discontinued. The fact that the court finds that these parties had knowledge of its discontinuance since 1840, excludes the suggestion that it found an abandonment by nonuser since 1840, as there could be no abandonment of a highway not then in existence. The court must have ruled, therefore, that the vote of the town or the acts of the selectmen recited in the statement, or both together, constituted a legal discontinuance of the highway. In 1840 the only governmental agencies which could discontinue a highway were the General Assembly, the County Court, and the selectmen of the town within which the highway was situated. The finding gives no foundation for a conclusion that either the General Assembly or the County Court discontinued the highway in question. The statute then in force provided that "the selectmen of any town, may, with the approbation of such town, discontinue any public highway, or private way, which may have been laid out by them or their predecessors in office; or which may have been laid out by the proprietors' committee of said town, or in any other manner, except by the county court or general assembly; and if any person shall be aggrieved by the doings of the selectmen in discontinuing any way, he may be relieved by application to the county court," etc. General Statutes, Comp. 1838, pp. 344, 346; Rev. 1849, p. 421, § 23. A town in town meeting could not discontinue a highway. If, therefore, the town of Woodbridge by the vote recited in the finding intended, as stated in the finding, to discontinue the highway in question, the vote was ineffective to accomplish such purpose. It is apparent from its terms that the vote was not intended as a ratification of a discontinuance of the old high-

way by the selectmen already made at the time. It is rather an acceptance of the proposition of Clark and Hotchkiss for a new highway. The proposition included a proposal that the selectmen should give the proponents, so far as it could be done without discommoding the proprietors of the Westfield woods, a quitclaim deed of the old road, continuing that as a pentway secured with gates and bars at the expense of Clark and Hotchkiss. The town might, in advance of action by the selectmen discontinuing the highway, approve such a discontinuance by them in the future. *Welton* v. *Thomaston*, 61 Conn. 397, 399, 24 Atl. 333. But the court has found that it was the intention of the town by that vote to discontinue the old Dogman road and substitute the new Dogman road in its place. The town's intention must be determined from the terms of the vote. It is clear that the town did not intend to discontinue that highway to the inconvenience of the proprietors of Woodfield, for the selectmen are to quitclaim the old road only so far as it can be done without discommoding those proprietors ; and it is to be continued as a pentway for their convenience, the gates and bars to be provided at the expense of Clark and Hotchkiss. Anciently highways were allowed to be pent. 4 Col. Rec. p. 315 ; *Hill* v. *Hand*, 6 Col. Rec. p. 460; 12 Col. Rec. p. 37 ; General Statutes, 1808, p. 376 ; *Blakeslee* v. *Tyler*, 55 Conn. 387, 11 Atl. 291. The highway in question, in the case last named, was laid out in 1818 as a pent highway by the selectmen of the town of Branford, with the approval of the town, and continued pent until 1879. It is not clear, therefore, that the town of Woodbridge intended by its vote to discontinue the old highway. It is quite as likely that it intended simply that it should thereafter be a pent highway. But if the intention was to discontinue it as a highway, the vote was ineffective, as beyond the power of the town, to accomplish the purpose. And if it is to be taken as an approval of a future discontinuance by the selectmen, it was conditioned upon such discontinuance not proving an inconvenience to the pro-

prietors of Woodfield, and that it should continue a pent-way with gates and bars for the use of those proprietors. It does not appear in what manner the road became a highway. In the absence of facts indicating the contrary, it is to be presumed that the title to the land, subject to the easement, was in the abutting proprietors, and that upon the discontinuance of the highway they would hold it freed of such easement. If Clark and Hotchkiss were such adjoining proprietors, they would need no deed from the selectmen, and if they were not abutting proprietors such deeds would convey nothing to them. A discontinuance of the highway without provision being made for the proprietors of Woodfield, would shut them off from this approach to their wood lots over the old road, and they could only acquire a new right by purchase or adverse user. The condition imposed by the vote of the town was therefore important to them. It did not appear upon the trial that the selectmen gave the deeds referred to in the vote, nor does it appear that the selectmen took formal action discontinuing the highway. In discontinuing a highway the selectmen act as agents of the law, and can exercise no powers except such as are conferred by statute. *Simmons* v. *Eastford*, 30 Conn. 286, 288. Their action, and the action of the town approving it, therefore, should be formal and definite, so as to give parties who may be aggrieved an opportunity to apply to the court for the relief which is provided by statute. There is nothing in the present case to show a discontinuance by the selectmen, unless it be the fact that after the vote in question fences were built across the highway by direction of the selectmen and travel actually excluded therefrom. This was not the discontinuance provided for by statute. It may have been done pursuant to a formal vote or action by the selectmen discontinuing the highway, or it may have been done because the selectmen understood that the town by its vote had already discontinued it. The law requires that the selectmen shall themselves act upon the question whether there shall be a discontinuance. Discontinuance

is the result of judicial investigation and determination. *Cromwell* v. *Connecticut Brown Stone Quarry Co.*, 50 Conn. 470, 472. The act of the selectmen directing that the road should be fenced up was equivocal. At most it was a circumstance from which the court might, as an inference of fact, find the fact that the selectmen as agents of the law had voted to discontinue the highway. The court has not found that fact, and until it is found it cannot be said as a matter of law that the highway was legally discontinued. And if the selectmen in fact voted to discontinue the highway without providing for the use of it as a pentway by the Woodfield proprietors, their action was not in conformity to the recited vote, and that vote cannot be treated as an approval by the town, and no other act of approval is shown. The court was wrong, therefore, in its conclusion that upon the facts found the old Dogman highway was discontinued.

Whether the roads in question, if not highways, were private ways appurtenant to the Thompson tract, was not determined by the court. The question was presented by the second defense as amended, but the decision of this branch of the case is placed upon the ground that the defendants had no right to remove the gates, because "the order turning over the tract of land in question 'to the park commissioners for park purposes' was without authority and of no effect." In connection with this ruling were the additional ones, that "the devise of the Thompson wood tract remains effective, and the restrictions imposed by the testator as to the purpose and use to which the property is to be devoted, remain effective," and "exclude any general public use and occupation of the property; or its appropriation for park purposes"; also that "neither the so-called Consolidation Act of 1897, nor any subsequent legislation, has given the city a greater or different interest in the tract than the town originally had under the trust created by the will, and the city acquired no right by virtue of § 219 of its charter, to name 'agents or officials' to administer the trust."

It may be conceded that those restrictions remain effective, and that the city in possession of the land has no greater or different interest in it than the town originally had. But the restrictions clearly were not intended for the benefit of the plaintiff's land. If that land was subject to rights of way appurtenant to the Thompson tract, the restrictions in no way affect such easements. They still exist, and those in possession of the dominant estate may use them for all purposes for which they were created. The plaintiff's concern is not whether the dominant estate is being diverted from the purposes of the trust, but whether the ways are being used for other purposes than those for which they were established. The plaintiff closed the ways with locked gates, and prevented all access to the dominant estate for any purpose. Had the city brought its action for this obstruction of the ways, it would have been no answer to say that the city was. using or proposing to use the Thompson land for purposes unauthorized by the devise. The defendants removed the obstructions, and justify doing it, simply as custodians of the land for the city. The order placing the land in their custody, as appears, turned it over to them for park purposes. Assuming that such purposes are inconsistent with the restrictions imposed by the devise, which we do not decide, the order was effective at least so far as to place the land in their custody, and it became their duty when so in their custody to protect it and its appurtenant ways from encroachments.

The plaintiff claims that to authorize the order and make it effective to give the defendants authority to act for the city, they must show that the city had title to the land, and that no such title is shown by the finding. But one in possession of premises to which an easement is appurtenant may have an action for a disturbance or obstruction of such easement. A tenant or a *cestui que trust* in possession of the dominant estate may have such an action for the injury to his possession. *Hamilton* v. *Dennison*, 56 Conn. 359, 368, 15 Atl. 748; Washb. on Easements (2d Ed.) 662; *Foley* v. *Wyeth*, 2 Allen (Mass.) 135, 136; 1

Perry on Trusts (5th Ed.) § 328.  It follows that he may remove the obstruction as a nuisance.

The quitclaim deeds offered in evidence by the defendants were objected to as inadmissible unless supplemented by further proof of the title of the releasors.  The deeds were admissible as links in the chain of title, but standing alone, without proof of the releasor's title, would be of slight if any weight.  It does not appear whether they were supplemented as suggested or not.  Upon this state of the facts it cannot be said that the court erred in considering them in reaching its conclusions.

There is error and a new trial is ordered.

In this opinion the other judges concurred.