GENERAL DYNAMICS CORPORATION *v.* CITY OF
GROTON ET AL.

BOGDANSKI, C. J., PETERS, HEALEY, PARSKEY and ARMENTANO, Js.

484

Argued April 7—decision released June 23, 1981

*Frank N. Eppinger,* with whom was *Peter J. Bartinik,* for the appellants (defendants Betsy B. Gibson et al.).

*Melvin Scott,* with whom, on the brief, were *Nancy M. Lipper* and *C. George Kanabis,* for the appellants (defendants Victor Elci et al.).

*James F. Brennan, Jr.,* with whom was *Thomas B. Wilson,* for the appellee (plaintiff).

*James T. Haviland II,* for the appellee (named defendant).

PETERS, J.  This litigation arises out of the request of the plaintiff, General Dynamics Corporation, that the defendant, the city of Groton, discontinue a portion of a public highway in Groton. The city of Groton agreed to the discontinuation, but a group of citizens, Betsy B. Gibson, Irene Garagliano, John Garagliano, Raymond Beaulieu and Timothy Giesling (hereinafter Gibson et al.) interposed timely objections, so that the trial court, *Santaniello, J.,* appointed a committee, pursuant to General Statutes § 13a-50, to determine "the convenience or necessity" of the highway.  The com-

mittee's report in favor of the discontinuation was accepted by the trial court, *Spallone, J.,* despite various remonstrances by Gibson et al., and by others who unsuccessfully sought to intervene at that stage in the proceedings. These various groups have appealed from the judgment ordering discontinuation of the highway; the city of Groton joins with the plaintiff in urging affirmance of the judgment below.

The underlying facts are undisputed. The plaintiff, General Dynamics Corporation, owns land immediately adjacent to both sides of Eastern Point Road, a public highway in the city of Groton. When General Dynamics was considering the building of a new technology center, it informed the city of Groton that it would build that center in the city of Groton only if two city streets, Brown Street and Eastern Point Road, were closed.[1]  Although the center itself would not have abutted Eastern Point Road, the plaintiff sought the closing of Eastern Point Road for security reasons. In response to the plaintiff's application for the discontinuation of a 950 foot section of Eastern Point Road, on August 20, 1979, the mayor and the council of the city of Groton adopted a resolution that the road be discontinued.  The planning commission of the city of Groton approved this resolution a week later.

Although the city charter gives to the mayor and council exclusive authority and control over all streets and highways within the city limits, Eastern Point Road had been laid out by the decree of the Superior Court for New London County on May 17, 1869.  Under General Statutes §§ 13a-49 and 13a-50,

[1] The discontinuation of Brown Street is not an issue in the present litigation.

judicial approval was therefore required to discontinue Eastern Point Road, because a municipality is not permitted to discontinue a highway laid out by a court.

Judicial proceedings were initiated by an order to show cause, dated October 1, 1979, which set a hearing on the application for discontinuance for October 30, 1979. Notice was given by publication on city signposts and in two local newspapers. Several citizens, herein described as Gibson et al., entered pro se appearances on or about October 25, 1979, and were made parties to the case at the hearing held on October 30, 1979. Because of these parties' objections to the discontinuance, the trial court appointed a committee pursuant to General Statutes § 13a-50 to decide questions concerning the convenience or necessity of the highway.

The proceedings before the committee, on November 20 and 21, 1979, were in the form of a quasi-judicial hearing. Testimony and exhibits were received, without limitation, from the parties and their witnesses. To interested members of the general public, however, the committee gave the impression that they could not participate unless they were parties or persons called as witnesses by the parties.

The committee's report of December 21, 1979 found that public convenience and necessity would be served by the discontinuance of the designated portion of Eastern Point Road. The report found that other roads in the town of Groton are adequate to absorb the increase in traffic that would be caused by the closing of Eastern Point Road to through travel. The report also noted that pedestrian congestion presently operated, at least three times a day, to close the road to vehicular traffic. The

report gave no other reasons for its conclusion that public convenience and necessity would be served by granting the plaintiff's application.

In order to obtain judicial review, motions were thereupon filed in the trial court by Gibson et al., and others who sought then to intervene, to have the report of the committee rejected. At the same time, the plaintiff filed a motion for acceptance of the report, and for judgment. The case had, in the meantime, been reassigned from Judge Santaniello to Judge Spallone, who ruled that neither Gibson et al., nor any of those who subsequently attempted to intervene before the court, had the right to challenge the report as parties, although they were allowed to be heard as citizens to remonstrate against the report. Ultimately the court found that none of the objections to the report was valid and adjudged that the designated portion of Eastern Point Road be discontinued.

An abundance of issues has been raised on the appeal to this court. The appellants maintain that the trial court erred: (1) in ruling that they were not parties; (2) in approving the procedures used for notice by publication; (3) in permitting application of the statutory procedure to the discontinuance of this highway; and (4) in accepting the report of the committee. Our consideration of these issues is complicated by the obscurity of the record both before Judge Spallone and in this court. It is apparent from Judge Spallone's memorandum of decision that he was not informed that Judge Santaniello had previously made Gibson et al. parties to this litigation.[2] It is equally apparent that Judge

---

[2] Why this matter was left in obscurity is difficult to understand. Gibson et al., having been pro se litigants, perhaps did not fully comprehend the significance of that which had earlier transpired.

Spallone found the committee's proceedings to be free of "any irregularity or impropriety," the standard established by General Statutes § 13a-50, on the assumption, which has now proven to be inaccurate,[3] that all those who appeared before him could have presented evidence at the hearing before the committee.

## I

The first question that we must address is the standing as parties of those who are presently before us as appellants in this case. The trial court, *Spallone, J.*, ruled that none of those who appeared to remonstrate against the committee's report had standing to do so as parties. Those who sought such standing were two groups of claimants: Gibson et al., and Victor Elci, Delia Zieziulewicz and Peter Mariani (hereinafter Elci et al.).[4]

With respect to Gibson et al., the court acknowledged that these persons had filed timely pro se appearances prior to the referral of the discontinu-

---

Counsel for the plaintiff, however, who was present at all of the hearings, and who had urged Gibson et al. not to become parties (because they might become responsible for court costs), had an obligation, as an officer of the court, to come forward with the relevant information.

[3] A post-judgment stipulation, dated December 30, 1980, states: "Although the Committee made no formal ruling on the record as to who could participate in the hearing, an impression was created by virtue of a discussion between the Committee and others, prior to the commencement of the hearing, that only those persons who were parties could participate at the hearing on the issue of public convenience and necessity, and that those who were not parties could participate only if called as a witness for or by a party." The stipulation is supported by a transcript of the hearing held by the committee. Upon the plaintiff's request, Judge Spallone denied a defense motion for an extension of time, until this transcript would have become available, for the filing of a remonstrance.

[4] Pfizer, Inc., also sought to intervene below but has not appealed its inability to do so.

ance to the committee of inquiry. The court, not having been informed that they had been made parties at that time, ruled that they had shown no personal interest different from that of the population as a whole and therefore were not entitled to be parties. The court's ruling was in error because Judge Santaniello had in fact previously, with the plaintiff's acquiescence, made these persons parties to this litigation. Only because Gibson et al. were parties could their opposition to the discontinuance of Eastern Point Road have forced the appointment of a committee of inquiry.[5] Judge Santaniello's ruling was binding upon Judge Spallone as part of the law of the case. *Maloney* v. *Pac,* 183 Conn. 313, 325n, 439 A.2d 349 (1981); *State* v. *Deep,* 181 Conn. 284, 286, 435 A.2d 333 (1980); *Sanchione* v. *Sanchione,* 173 Conn. 397, 406, 378 A.2d 522 (1977).

The question of the rights of Elci et al. to become parties was first raised at the time of the judicial hearings before Judge Spallone. Although Elci et al. claimed to have a special interest as abutting landowners, the court made no express factual finding in this regard; to the contrary, it concluded that these persons had failed to show an interest in the case different from that of the general public. The court did not dwell on this factual issue because it determined that their effort to intervene was untimely.[6] The court based this conclusion on the

---

[5] Under General Statutes § 13a-50, "all questions arising as to the convenience or necessity of such highway shall, *unless the parties agree,* be decided by a committee to be appointed by the court . . . ." (Emphasis added.) Since the plaintiff and the defendant city were in agreement, the disagreement of Gibson et al. was crucial.

[6] It is arguable whether these persons presented their claim to intervene in a manner that was procedurally satisfactory. They filed appearances by counsel rather than filing motions to intervene.

premise that Elci et al. could and should have appeared before the committee to air their grievances there. Although the trial court ordinarily has great latitude in determining whether or not to allow parties to intervene in ongoing litigation; General Statutes §§ 52-102, 52-107, 52-108; Practice Book §§ 85, 99, 100; *Lettieri* v. *American Savings Bank,* 182 Conn. 1, 13, 437 A.2d 822 (1980); *Jones* v. *Ricker,* 172 Conn. 572, 575 n.3, 375 A.2d 1034 (1977); the reason assigned in this case for refusing intervention indicates that this discretion was mistakenly exercised. In fact, Elci et al., as members of the general public, had not been invited to present their views to the committee. Furthermore, to the extent that Elci et al. wished to raise questions concerning the jurisdiction of the committee or the constitutionality of the statute under which it was operating, they were free to do so in judicial proceedings without having first exhausted their administrative remedies. *Burnham* v. *Administrator,* 184 Conn. 318, 322, 439 A.2d 1008 (1981); *Connecticut Light & Power Co.* v. *Norwalk,* 179 Conn. 111, 117, 425 A.2d 576 (1979).

Although the effort of Elci et al. to intervene was thus timely, we must still decide whether they had to prove their aggrievement before they could become parties. Nothing in General Statutes § 13a-50 expressly limits the right to challenge a committee's report to those who are aggrieved; the statute says that "any person may appear and be heard in relation to [the] application [to discontinue a highway] . . . ." Just as a statute can confer automatic standing on any person to protect

Compare Practice Book §§ 63–66 with §§ 82–85, 100. Because the trial court treated their actions as if they had filed motions to intervene, we will do the same.

the public trust in the environment; *Manchester Environmental Coalition* v. *Stockton,* 184 Conn. 51, 55–56, 441 A.2d 68 (1981); *Mystic Marinelife Aquarium, Inc.* v. *Gill,* 175 Conn. 483, 490, 400 A.2d 726 (1978); so can a statute confer standing on any person to contest the discontinuance of a public highway. The need for the intervention of private citizens to vindicate the public trust in public thoroughfares is well illustrated by the facts of this case, where the plaintiff and the defendant city were acting in concert to have the highway discontinued. Compare *Hiland* v. *Ives,* 28 Conn. Sup. 243, 246–47, 257 A.2d 822 (1966). The trial court therefore erred in holding that Elci et al. could not intervene as parties defendant.

## II

The appellants raise a number of jurisdictional issues with regard to the notice by publication given at the institution of judicial proceedings before Judge Santaniello. The appellants Elci et al. argue that the notice provisions contained in General Statutes § 13a-50 are constitutionally defective; all the appellants argue that there was failure to comply with the statutory requirements contained in § 13a-50.

The constitutional attack on § 13a-50 as failing to comport with the requirements of procedural due process[7] is, as the appellants concede, dependent upon their identification of a constitutionally protected interest. The defendants Elci et al. argue that they have such a special property right because they are abutting landowners. There is, however, no factual finding to that effect, and we cannot supply one. Notice to the public at large is routinely

[7] U.S. Const., amends. V, XIV; Conn. Const., art. 1 § 10.

given by publication, because that is the only method which is feasible. Cf. *Goss* v. *Lopez,* 419 U.S. 565, 579, 95 S. Ct. 729, 42 L. Ed. 2d 725 (1975). In analogous circumstances involving a change of zoning, we have repeatedly upheld the constitutional sufficiency of constructive notice by publication. *Jarvis Acres, Inc.* v. *Zoning Commission,* 163 Conn. 41, 47, 301 A.2d 244 (1972); *Kleinsmith* v. *Planning & Zoning Commission,* 157 Conn. 303, 310, 254 A.2d 486 (1968); *Edward Balf Co.* v. *East Granby,* 152 Conn. 319, 325–26, 207 A.2d 58 (1965). In the circumstances of this case, the appellants have not demonstrated a violation of their constitutional rights to due process.

The constitutionality of § 13a-50's provisions for constructive notice depends, however, upon substantial compliance with its requirements for notice by publication. The statute expressly requires that "[a]ll such applications shall be served as other civil process upon the towns in which such highway is located. The officer making such service shall place upon one or more of the signposts in such town a certified copy of such application and citation, at least twelve days before the session of the court to which the same is returnable, and further notice shall be given by publishing an advertisement in some newspaper, published in such judicial district, describing such highway, at least three weeks before the session of said court." The appellants maintain that the service of process in this case deviated from the statutory requirements in two respects: the officer who placed the notice upon the signpost was not the sheriff who had served the process, but a city clerk acting at his request; and the application that was posted was not a certified, but only a true and attested, copy. While

we agree that compliance with the essential conditions prescribed by the statute is a requisite for the court's jurisdiction; see *Greist* v. *Amrhyn,* 80 Conn. 280, 285, 68 A. 521 (1907); noncompliance in minor details amounting to mere irregularities may be waived. *D'Andrea* v. *Rende,* 123 Conn. 377, 380, 195 A. 741 (1937).

In appraising the claims addressed to the deviations from statutory procedures in this case, we must bear in mind the purpose that these statutory procedures were intended to serve. The fundamental question is the adequacy of notice to the town and to the public. Notice to the town is not at issue. Notice to the public is afforded by timely posting of the application and the citation on the town signposts. Even if it is doubtful that the sheriff had the authority to deputize the city clerk to do the posting; see *Village Creek Homeowners Assn.* v. *Public Utilities Commission,* 148 Conn. 336, 339, 170 A.2d 732 (1961), and General Statutes §§ 6-38 and 52-53; even if the application should have been certified by the clerk of the court rather than by the sheriff; see *Dibble* v. *Morris,* 26 Conn. 416, 425 (1857); these defects did not interfere with the notice-giving function that the posting of the application accomplished. Because the notice, which was posted on the town signposts for the prescribed statutory period, was an accurate copy of the application for discontinuance of Eastern Point Road, it fairly apprised the public of the matter to be heard. *Edward Balf Co.* v. *East Granby,* supra, 325–26. The deviations that occurred, even though only minor irregularities, might have required judicial action had there been a timely motion to dismiss the proceedings before the committee of inquiry had been appointed. At

the time, however, that these claims were first raised, at the hearing before Judge Spallone, any such defects had been waived.

We conclude therefore that the appellants have not sustained their challenge with respect to in personam jurisdiction. The statute on its face and as applied in this case provided sufficient constructive notice of the forthcoming judicial inquiry into the discontinuance of Eastern Point Road.

### III

The appellants also challenge the trial court's subject matter jurisdiction to discontinue Eastern Point Road. They point to two considerations that they claim to be controlling: Eastern Point Road, although originally laid out to be forty-nine and a half feet wide, is now sixty feet wide; and the application to discontinue Eastern Point Road purported to preserve certain city easements for utility lines and appurtenances. They argue that these facts demonstrate that the court exceeded its jurisdiction under § 13a-50. We are not persuaded of the merits of either of those challenges.

Whatever the width of Eastern Point Road, the effect of the current judicial proceedings is solely to extinguish the public easement originally established in 1869 and thereafter increased in some manner whose legality is not presently at issue. The plaintiff, as the abutting landowner on both sides of the road, is presumed to own the fee to the road. *Antenucci* v. *Hartford Roman Catholic Diocesan Corporation,* 142 Conn. 349, 355, 114 A.2d 216 (1955). The defendant city has acquiesced in the discontinuance. The court therefore had jurisdiction, by the discontinuance of Eastern Point Road, to extinguish the public easement therein.

*Peck* v. *Smith,* 1 Conn. 103, 132 (1814); 11 McQuillin, Municipal Corporations (3d Ed. Rev. 1977) § 30.202.

For similar reasons, the extinguishment of this easement is not rendered improper by the reservation of rights to a different easement, for utility lines and appurtenances thereto. The two easements are independent property rights which need not rise or fall in tandem. See 11 McQuillin, supra, § 30.202b.

## IV

The appellants' final claim of error challenges the trial court's acceptance of the report of the committee that concluded that "public convenience and necessity will be served" by discontinuance of Eastern Point Road. Under General Statutes § 13a-50, "any person . . . may remonstrate against the acceptance of the report of the committee for any irregularity or impropriety in the performance of its duty." The trial court held, and we agree, that it was the function of the committee and not of the court to find the facts relating to "all questions arising as to the convenience and necessity of such highway." See *Cone* v. *Darrow,* 148 Conn. 109, 111, 167 A.2d 852 (1961); *Perkins* v. *Andover,* 31 Conn. 601, 604 (1863). The trial court assumed, however, in its memorandum of decision that the committee had found the relevant facts "after a public hearing, whereat all interested parties were given an opportunity to be heard." The absence of such a hearing is now established by a stipulation of the parties that the committee publicly created the impression that only parties, or persons called as witnesses by parties, could participate.

This court has not often or recently had the occasion directly to determine the kind of hearing that

is contemplated by § 13a-50 which specifies that "any person may appear and be heard." The limited authority that exists indicates that the special tribunal is to conduct a public hearing at which the parties and other interested persons will be afforded an opportunity to present their views. *Webb* v. *Rocky-Hill,* 21 Conn. 468, 475 (1852); and see *Bristol* v. *Branford,* 42 Conn. 321, 322 (1875); *Shelton* v. *Derby,* 27 Conn. 414, 422 (1858); *Groton* v. *Hurlburt,* 22 Conn. 178, 191 (1852); compare *Pizzuto* v. *Newington,* 174 Conn. 282, 286, 386 A.2d 238 (1978). As in a zoning hearing, the tribunal undoubtedly has the right to exercise some control over how it will conduct its proceedings, but it cannot entirely exclude participation by the public. In the circumstances shown by the record in this case, the hearing that was actually held did not comport with the requirements of § 13a-50 because of its failure to allow interested citizens to be heard.

The appellants claim finally that the failure to hold a public hearing constituted so significant an "irregularity or impropriety" in the performance of the committee's duties that it was error for the trial court to have accepted its report. The plaintiff offers two answers to this claim. First, the plaintiff maintains that there is no reviewable error in the absence of a showing that someone objected at the committee hearing that he was being deprived of his opportunity to speak. Alternatively, the plaintiff claims that none of the appellants was harmed by any possible error: that Gibson et al. were not harmed because they were fully heard as parties, and that Elci et al. were not harmed because they did not ask to be heard at the committee hearing. It is true that the record discloses neither explicit

objections to the form of the committee hearing nor express committee refusal to permit any of the appellants to testify. Nonetheless, we do not find the plaintiff's rejoinders persuasive. Fundamental questions relating to the constitutionality, jurisdiction, or construction of an underlying statute can be raised even by those who were not initially parties to proceedings under the statute. *Aaron* v. *Conservation Commission,* 178 Conn. 173, 178, 422 A.2d 290 (1979); *Fox* v. *Zoning Board of Appeals,* 146 Conn. 665, 666–67, 154 A.2d 520 (1959); *National Transportation Co.* v. *Toquet,* 123 Conn. 468, 196 A. 344 (1937); see *Burnham* v. *Administrator,* 184 Conn. 318, 322, 439 A.2d 1008 (1981). The committee's report cannot stand in light of the disclosure that its hearing procedures were fundamentally flawed. There must be a public hearing before Eastern Point Road can be discontinued.

There is error, the judgment is set aside, and the case is remanded for further proceedings consistent with this opinion.

In this opinion the other judges concurred.