PALMER D. MARRIN *v.* DONALD G. SPEAROW ET AL.
(11812)

O'CONNELL, LANDAU and HEIMAN, Js.

Argued May 2—decision released August 9, 1994

*N. Peter Laskey,* for the appellant (plaintiff).

*Donald G. Spearow,* pro se, with whom, on the brief, was *Lee Anne Spearow,* pro se, the appellees (defendants).

O'CONNELL, J. In this action to quiet title, the plaintiff appeals from the judgment quieting title in the defendants. The plaintiff claims that the trial court improperly (1) rendered an inconsistent judgment by

finding that the defendants owned the disputed property both by conveyance of record title and by adverse possession, (2) failed to find that the plaintiff owned record title to the land in dispute, (3) located the center line of the right-of-way, (4) found that the plaintiff's statutory easement pursuant to General Statutes § 13a-55 was extinguished by the defendants, (5) found that the road was properly discontinued by the town of Litchfield, and (6) found adverse possession by the defendants of thirty-three feet of land. We reverse the judgment of the trial court.

The following facts are necessary to a disposition of this appeal. The genesis of this action is a dispute over ownership of a road in Litchfield that is alleged to be no longer in use. The plaintiff claimed title to the disputed property or, in the alternative, a statutory easement upon discontinuance of a public highway pursuant to General Statutes § 13a-55.[1] By special defense, the defendants claimed ownership of the property both by title and by adverse possession.[2] They also pleaded that the highway had been abandoned.

---

[1] General Statutes § 13a-55 provides: "Property owners bounding a discontinued or abandoned highway, or a highway any portion of which has been discontinued or abandoned, shall have a right-of-way for all purposes for which a public highway may be now or hereafter used over such discontinued or abandoned highway to the nearest or most accessible highway, provided such right-of-way has not been acquired in conjunction with a limited access highway."

[2] General Statutes § 52-575 provides: "No person shall make entry into any lands or tenements but within fifteen years next after his right or title to the same first descends or accrues; and every person, not entering as aforesaid, and his heirs, shall be utterly disabled to make such entry afterwards; and no such entry shall be sufficient, unless an action is commenced thereupon and prosecuted to effect within one year next after such entry; but, if any person who has such right or title of entry into any lands or tenements is, at the time of the first descending or accruing of such right or title, a minor, non compos mentis or imprisoned, he and his heirs may, notwithstanding the expiration of such fifteen years, bring such action or make such entry at any time within five years next after full age, coming of sound mind or enlargement out of prison, or his heirs shall, within five

Following a trial to the court, the court filed a memorandum of decision finding that the road had been discontinued by the town and that the defendants were the owners of the property by adverse possession. By way of a motion for articulation, the plaintiff sought to have the trial court clarify the record ownership of the property. In response thereto, the trial court articulated that "[t]his court makes no finding as to who had record title to the subject property since 1970. The right, title and interest of that record owner, be it [Vandewater] or Marrin or someone else, is found to have been extinguished by the adverse use claimed by the defendants."

The Appellate Court granted review of this articulation and ordered the trial court to supplement it, specifically in regard to ownership of the record title. The plaintiff's motion for articulation expressly posed the question: "Did the plaintiff's predecessor in title, George Vandewater, own title to the disputed property prior to being ousted by the defendants." The trial court tersely replied, "He did not," and then went on to explain that "Arthur and Elizabeth French were the record owners of a parcel of real estate which abutted the former highway on its northerly side. Upon its discontinuance, they were presumed to be the owners of the northerly one-half, or thirty-three feet of the road, and they commenced to use and possess the area. On April 11, 1975, the defendant Spearow took title to the French's property and continued to use and occupy the disputed property to the present time."

For the purposes of this appeal, it is not necessary that we review the correctness of the trial court's appli-

years after his death, bring such action, or make such entry, and take benefit of the same; provided the limitation herein prescribed shall not begin to run against the right of entry of any owner of a remainder or reversionary interest in real estate, which is in the adverse possession of another, until the expiration of the particular estate preceding such remainder or reversionary estate."

cation of the rule of law concerning ownership of a discontinued highway.[3] It is clear, however, that in its supplemental articulation, the trial court found that the defendants had succeeded to the title that the grantors acquired by operation of law when the road was discontinued. It is likewise clear that the title thus acquired was in no way dependent on the doctrine of adverse possession. In its initial memorandum of decision and first articulation, the trial court expressly held that the defendants owned the property by adverse possession, but, in its supplemental articulation, the trial court held that the defendants owned the property because legal title thereto passed to them from their grantors.

## I

The plaintiff first claims that the memorandum of decision and first articulation are inherently inconsistent and irreconcilable with the supplemental articulation. *DeVita* v. *Esposito,* 13 Conn. App. 101, 105, 535 A.2d 364, cert. denied, 207 Conn. 807, 540 A.2d 375 (1988), is directly on point. *DeVita* recognizes that a party may plead alternative and even inconsistent theories in the same action. See Practice Book §§ 94 and 137;[4] *Dreier* v. *Upjohn Co.,* 196 Conn. 242, 245, 492 A.2d 164 (1985); *DeVita* v. *Esposito,* supra, 105. Thus, the defendants in *DeVita* and the defendants in the present case properly pleaded the inconsistent theories of record title and adverse possession. In view of its allowance of these inconsistent pleadings, the *DeVita* defendants argued that the trial court properly ruled

---

[3] Whether the road was properly discontinued, however, will be discussed in part II of this opinion.

[4] Practice Book § 94 provides: "Persons may be joined as defendants against whom the right to relief is alleged to exist in the alternative, although a right to relief against one may be inconsistent with a right to relief against the other."

Practice Book § 137 provides: "The plaintiff may claim alternative relief, based upon an alternative construction of his cause of action."

that they had record title and also owned the property by adverse possession. *DeVita* v. *Esposito,* supra, 105.

In *DeVita,* the Appellate Court sharply and clearly disabused the defendants of the notion that their argument had any merit. "A duty of construction is placed upon the trial court whenever a party pleads inconsistent theories of recovery. . . . Although a party may plead, in good faith, inconsistent facts and theories, a court may not award a judgment on inconsistent facts and conclusions. A judgment, read in its entirety, must admit of a consistent construction. . . . Where a party is entitled to only a single right to recover, it is the responsibility of the trial court to determine which of the inapposite sets of facts the party has proved, and then to render judgment accordingly." (Citations omitted.) Id., 107.

"A person who claims title by deed is claiming that he has good record title which entitles him, in an action to quiet title, to a judgment of ownership. *Loewenberg* v. *Wallace,* 147 Conn. 689, 698, 166 A.2d 150 (1960). Conversely, a person who claims title by adverse possession is claiming that although he does not have record title, his proof of possession which is adverse, open, notorious and continuous for the entire statutory period entitles him, in an action to quiet title, to a judgment of ownership. *Ruick* v. *Twarkins,* 171 Conn. 149, 155, 367 A.2d 1380 (1976); *Schlough* v. *Ruley,* 1 Conn. App. 119, 120, 468 A.2d 1272 (1983)." Id., 106. "The trial court must first determine in which party record title lies, and then, if necessary, determine whether adverse possession has divested the record owner of his title." Id., 108.

In the present case, the trial court expressly declined in its memorandum of decision to find who owned record title and upon being pressed through articulation

concluded that record title was in the same party that it had earlier found had acquired title by adverse possession. This could not be done.

The defendant relies on *Loewenberg* v. *Wallace,* 151 Conn. 355, 197 A.2d 634 (1964). *Loewenberg* holds that a claim of adverse possession will not be defeated even though the claimants, in exercising dominion and control over property were motivated by an honest although mistaken belief that the area in question was included in the description of the property conveyed to them. Id., 357–58. In *Loewenberg,* the claimants clearly did not have record title to the property, but thought that they did. Here, the trial court found that the defendants had record title but also had acquired title to the same property by adverse possession. *Loewenberg* is inapposite to the present case.

When a trial court has rendered a judgment containing inconsistencies, we must vacate the judgment and remand the case for a new trial. *DeVita* v. *Esposito,* supra, 13 Conn. App. 112.

## II

Because our analysis of the plaintiff's first claim requires a new trial, we do not reach the other claims except for the issue of whether the road was properly discontinued because that issue raises a question of law that is likely to arise again on retrial.

The plaintiff alleged that the road in question was not properly discontinued, and the defendants by special defense alleged that the road had been abandoned. The trial court found that the road "was properly discontinued in 1973, and that it had not been used as a public highway for many years prior to that date, nor since."

"Discontinuance" and "abandonment" are not synonymous terms as applied to highways. "A highway

may be extinguished by direct action through governmental agencies, in which case it is said to be discontinued; or by nonuser by the public for a long period of time with the intention to abandon, in which case it is said to be abandoned." *Greist* v. *Amrhyn,* 80 Conn. 280, 285, 68 A. 521 (1907). The methods of discontinuing a highway through governmental agencies are prescribed by law and must be strictly followed. Id.

General Statutes § 13a-49 empowers town selectmen to discontinue highways unless the highway was laid out by a court or the general assembly.[5] General Statutes § 13a-50 provides that the Superior Court may discontinue any highway that cannot be discontinued by the selectmen.[6]

On February 21, 1973, the town of Litchfield passed a resolution purporting to discontinue the road. The evidence, however, shows that the road was laid out by the Superior Court for Litchfield county in 1865. Accordingly, only the Superior Court had jurisdiction to discontinue it. "[A] municipality is not permitted to discontinue a highway laid out by a court." *General Dynamics Corp.* v. *Groton,* 184 Conn. 483, 486, 440 A.2d 185 (1981). An attempt by a town to discontinue a road that it did not lay out is void. *Meriden* v. *Bennett,* 76 Conn. 58, 70, 55 A. 564 (1903); *Simmons* v. *Eastford,* 30 Conn. 286, 288–89 (1861); see R. Fuller, 9 Connecticut Practice Series, Land Use Law and Prac-

---

[5] General Statutes § 13a-49 provides in pertinent part: "The selectmen of any town may, subject to approval by a majority vote at any regular or special town meeting, by a writing signed by them, discontinue any highway or private way, or land dedicated as such, in its entirety, or may discontinue any portion thereof or any property right of the town or public therein, *except when laid out by a court or the general assembly,* and except where such highway is within a city, or within a borough having control of highways within its limits. . . ." (Emphasis added.)

[6] General Statutes § 13a-50 provides in pertinent part: "The superior court, on the application of any person, may discontinue any highway in the judicial district where it is held, *which cannot be discontinued by the selectmen . . . .*" (Emphasis added.)

tice (1993) § 49.3. The evidence does not support a conclusion that Litchfield's February 21, 1973 resolution lawfully discontinued the road in question.

Turning now to abandonment, we note that the trial court's finding was limited to the fact that "it had not been used as a public highway for many years [prior to Litchfield's discontinuance] nor since." This is not sufficient. Mere nonuse is not enough. The case law requires an intent to abandon together with the nonuse. See E. Sostman & J. Anderson, "The Highway and the Right of Way: An Analysis of the Decisional Law in Connecticut Concerning Public, Private and Proposed Roads from Establishment to Abandonment," 61 Conn. B.J. 299–98 (1987).

The judgment is reversed and the case is remanded for a new trial.

In this opinion the other judges concurred.