[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
The plaintiffs Ira and Judith Ellenthal appeal a decision of the defendant inland wetlands and watercourses agency of the town of Greenwich (hereinafter "agency") denying their application for a wetlands permit to construct a single family residence on land owned by the plaintiffs located on Tyler Lane in Greenwich, Connecticut. The agency's action was taken pursuant to General Statutes § 22a-42a. This appeal is brought pursuant to General Statutes § 22a-43. The court finds the issues for the defendants.
The following facts are not in dispute. The plaintiffs Ira and Judith Ellenthal are the owners of certain real property located on Tyler Lane in Greenwich, Connecticut. The land at issue contains two areas of wetlands. The plaintiff Judith Ellenthal submitted an application for a wetlands permit dated February 1, 1992 seeking permission from the agency to build a single family house on the property. The agency held public hearings on the plaintiff's application on June 8, 1992, and September 14, 1992. On January 4, 1993, the agency voted six to one to deny the plaintiff's application. The agency's decision was communicated to the plaintiffs through a letter dated January 6, 1993.
The agency found that the regulated area on the property consists of a watercourse corridor and approximately .142 acres of wetland soil. The agency also found that approximately .045 acres or 2,000 sq. ft. of the wetlands would be destroyed by house construction and that one of the few remaining wooded wetland CT Page 4673 habitats in the Riverside section of Greenwich would be destroyed by the proposed activities.
The agency listed a number of reasons for its denial of the plaintiff's application. The agency's reasons included: (1)
severe sedimentation, erosion and downstream siltation; (2)
potential flooding impacts on adjacent properties; (3) the lack of an adequate analysis of feasible and prudent alternatives and(4) an inadequate plan to mitigate for the loss of wetlands. Record item 97, agency's statement dated January 4, 1993.
The plaintiffs filed the instant appeal against the defendant agency pursuant to General Statutes § 22a-43. Also named as defendants were Timothy Keeney, the commissioner of the department of environmental protection; Raymond J. Heinbuck, in his capacity as chairman of the inland wetlands and watercourses agency; Emerson L. Stone, in his capacity as clerk of the inland wetlands and watercourses agency and Carmela E. Budkins, in her capacity as municipal clerk of the town of Greenwich.
At the outset, this court must determine whether the plaintiffs are aggrieved by the decision of the defendant agency. See Bakelaar v. West Haven, 193 Conn. 59, 65 (1984). The fundamental test for deciding aggrievement is a well settled one. "First, the party claiming aggrievement must successfully demonstrate a specific, personal and legal interest in the subject matter of the decision, as distinguished from a general interest, such as is the concern of all members of the community as a whole. Second, the party claiming aggrievement must successfully establish that this specific, personal and legal interest has been specifically and injuriously affected by the decision." MysticMarinelife Aquarium, Inc. v. Gill, 175 Conn. 483, 493 (1978).
The plaintiffs Ira and Judith Ellenthal are the owners of the real property located at Tyler Lane in Greenwich for which a wetlands permit was sought. See testimony of Judith Ellenthal at the December 20, 1993 hearing before this court and Exhibits A, B and C comprising the deeds for the subject property. The plaintiff Judith Ellenthal is also the applicant who sought a wetlands permit to construct a single family house on the subject property. Record item 3. The owners of the property that is the subject matter of the application to the agency certainly possess the requisite specific, personal and legal interest and have been specifically and injuriously affected by the Agency's decision. Huck v. InlandWetlands and Watercourses Agency, 203 Conn. 525, 530 (1987); CT Page 4674Bossert v. Norwalk, 157 Conn. 279, 285 (1968).
At the hearing held before this court on December 20, 1993 the defendant agency asserted that the plaintiffs are not aggrieved. The defendant agency based its claim on the fact that the plaintiffs submitted an amended site plan to the agency which added a small triangular piece of land to the subject property. This triangular piece of property is owned by the plaintiff Ira Ellenthal. The defendant agency claims that since the applicant, Judith Ellenthal, does not own the entire property which is at issue the plaintiffs are not aggrieved. The defendant agency citedBeckish v. Manafort, 175 Conn. 415 (1978) in support of its position.
The defendant agency's reliance on Beckish v. Manafort, is misplaced. In Beckish, the Connecticut Supreme Court held that the plaintiff was not aggrieved by the decision of the state standards committee denying her permission to re-erect a sign because the plaintiff did not show she had an ownership interest in the land in question. The case does not stand for the proposition asserted by the defendant agency that a plaintiff must show that he or she is the sole or entire owner of the land at issue. A plaintiff need only show some ownership or legal interest in the land which would be adversely affected by the agency decision. See Beckish v.Manafort, supra, 175 Conn. 421. Moreover, one of the plaintiffs, Ira Ellenthal, does own, alone or with his wife, all of the land at issue in this appeal.
This court shares the view expressed by the Connecticut Supreme Court in Rogers v. Zoning Board of Appeals, 154 Conn. 484
(1967): "It should be noted parenthetically that we find it difficult to understand on what theory the owner of the land which is the subject of the court's ruling would not be an aggrieved person." Rogers v. Zoning Board of Appeals, supra, 184 Conn. 488. The agency's position that the plaintiffs are not aggrieved is at best "an overly technical application of the test of aggrievement". See DiBonaventura v. Zoning Board of Appeals, 24 Conn. App. 369,377 (1991).
The plaintiffs claim that the agency's decision is illegal, arbitrary and constitutes an abuse of discretion. In their complaint, plaintiffs cite nine reasons to support their position.[1] Two of these reasons were not briefed by the plaintiff nor asserted at oral argument before this court. Therefore, they are deemed abandoned.[2] Collins v. Goldberg, 28 Conn. App. 733, CT Page 4675 738 (1992).
Two of the bases assert that substantial evidence exists in the record to support the plaintiffs' factual claims. However, the appropriate standard for review of a decision of an inland wetlands and watercourses agency is whether there is substantial evidence in the record that reasonably supports the agency's administrative decision. Feinson v. Conservation Commission, 180 Conn. 421, 425
(1980). "The plaintiff must establish that substantial evidence does not exist in the record as a whole to support the agency's decision". Samperi v. Inland Wetlands Agency, 226 Conn. 579, 587
(1993).
The fact that a plaintiff has substantial support in the record to buttress his factual claims is not controlling. While this court must take into account that contradictory evidence exists in the record, the possibility of drawing two inconsistent conclusions from the evidence does not mean an administrative agency's findings lack substantial evidence. Huck v. InlandWetlands and Watercourses Agency, 203 Conn. 525, 542 (1987).
The five remaining reasons offered by the plaintiffs essentially boil down to three claims: (1) the record does not contain substantial evidence to support the action of the agency;(2) a feasible and prudent alternative does not exist and (3) the agency's action constitutes a taking of the plaintiffs' property without just compensation in violation of article first, § 11 of the constitution of Connecticut. The court rejects each of these claims.
The agency cited a number of reasons for its decision denying the plaintiffs' application, including the following:
(1) Approximately .045 acres or two thousand square feet of wetlands would be destroyed by house construction.
(2) The proposed construction would cause potential flooding impacts on adjacent properties and reduce the wetlands and watercourses capacity to prevent flooding.
(3) Severe sedimentation, erosion and downstream siltation would result.
Record item 97. Substantial evidence exists in the record to reasonably support each of these findings.[3]
CT Page 4676
It is undisputed that the land at issue contains both wetlands and a watercourse.[4] The wetlands consist of two separate wetland areas. The watercourse is a channel. Record item 33, testimony by Anthony D'Andrea, p. 11. See General Statutes § 22a-38 which defines "watercourses" as including all bodies of water, natural or artificial, public or private, which are contained within this state.
The plaintiffs proposed to build their single family house directly on one of the wetland areas. As a result, the agency found that approximately .045 acres or 2,000 sq. ft. of the wetlands would be destroyed by house construction. The agency's finding is supported by the record. See Record item 7, statewide inland wetland reporting form and Record item 9, letter from Environmental Design Associates, P.C., dated March 20, 1992. The plaintiffs' own experts found that development would have an impact on the on-site wetlands. Record item 9. See also the testimony of the plaintiffs' expert Judith Slayback at the June 8, 1992 public hearing at which she stated that any residential development at all on the parcel would encroach on wetlands, watercourses and buffers. Record item 35.[5]
It is axiomatic that building a single family house directly on wetlands will adversely affect the wetlands. Wetlands soil will be removed by construction activity and be replaced by a building. The plaintiffs' professional engineer, Anthony D'Andrea, recognized that the proposed construction would result in "the loss of the remnants of wetlands soil in the area of the proposed dwelling". Record item 73, letter from Anthony D'Andrea to the agency dated September 24, 1992.[6]
Substantial evidence also exists in the record to support the agency's finding that the proposal would adversely impact flooding on adjacent properties. The agency heard testimony from six owners of neighboring lands that they were currently experiencing flooding problems on their property. These neighbors expressed their concern that the proposed development would exacerbate their existing flooding problems. Record item 21; item 33 at pp. 137, 157-160, 162; and item 67 at pp. 115-116.
The proposed construction of a single family house with a driveway would result in approximately 4,000 square feet of impervious area. Record item 33, p. 75, testimony of D'Andrea. Although the amount of runoff was subject to debate, it was CT Page 4677 undisputed that the addition of impervious area to the subject property would cause increased storm water runoff. Record item 20, and item 33, pp. 75 and 128.
Agency staff also noted their concern with "possible detention displacement which may occur by placement of the residence within the wetland finger." Record item 16. This concern finds support in the record in the testimony of the plaintiffs' expert, Judith Slayback, who stated at the public hearing that the eastern wetland soils, upon which the house would be built, holds water. Record item 67, p. 71.[7]
In light of the concern with increased runoff and possible detention displacement, agency staff, early on in the application process, recommended that additional information on the potential flooding impact be submitted by the applicant. The recommended information included written calculations to support the plaintiffs' conclusion that increased runoff will not exacerbate flooding conditions in and adjacent to the subject parcel; and an evaluation of the possibilities of creating wetland and/or increased detention on-site. Record items 16 and 23.
John Block, an expert hired by the defendants, John P. Lipsky and Susanna S. Karas, wrote a letter dated April 24, 1992, which reviewed the plaintiffs' application and which was submitted to the agency. Block stated that the increase in runoff from new impervious surfaces may cause flooding impacts on adjacent properties or on wetlands and that the increase in runoff can be controlled by detention. He further stated that "we strongly recommend that the applicant provide a drainage design documenting the existing runoff for various design storm frequencies and proposed runoff detailing the design of the roof drainage, footing drains and surface runoff and the method of detention to ensure no increase in flooding on adjacent parcels". Record item 20.
The plaintiffs decided not to contain the increased runoff through detention on the site.[8] Instead, they proposed a number of alternatives, including cleaning and maintaining the channel; expanding the wetlands area through excavation, thereby increasing its storage capacity; and redirecting the channel through the proposed development. Record item 67, pp. 56-57.[9]
The defendant expert Block reviewed the final site plan dated September 22, 1992, submitted by the plaintiffs to the agency. He concluded that the plans did not fully address the concerns of CT Page 4678 increased runoff and potential flooding. Record item 77. Block specifically listed numerous concerns with the plaintiffs' latest proposal and concluded that additional documentation of flooding impact was required.
There is substantial evidence in the record for the agency to have concluded that: (1) a flooding problem currently exists on adjacent land, (2) the proposed construction will increase the runoff onto adjacent land and possibly diminish the detention capacity of the subject wetlands and thereby increase the potential for flooding and (3) the plaintiffs failed to submit sufficient documentation showing than their proposal will not exacerbate the existing flooding problem.
Section 22a-41 (a) of the Connecticut General Statutes requires the agency to take into consideration all relevant faces and circumstances including "the character and degree of injury to, or interference with, safety, health, or the reasonable use of property which is caused or threatened . . ." (Emphasis supplied). It was therefore appropriate for the agency to base its decision to deny the plaintiffs' application on the potential flooding impact.[10]
Substantial evidence also exists on the record for the agency's decision to deny the plaintiffs a permit because of sedimentation, erosion and downstream siltation.[11] The defendant's expert, John Block, reviewed the final site plan submitted by the plaintiffs. In a letter dated September 30, 1992, and submitted to the agency, Block stated that "erosion problems can be expected" from the plaintiffs' design for extending the storm drain and that the plaintiffs' plan to excavate portions of the wetlands "will surely increase erosion and sedimentation". Record item 73. Block also stated that "it is impossible with the documentation submitted to date to assess . . . erosion and sedimentation problems resulting from the latest proposal." He recommended that the agency require the plaintiffs to submit an erosion and sedimentation control plan which addresses both short term and long term erosion and sedimentation control methods to ensure the elimination of erosion and sedimentation problems to adjacent properties. Record item 73.
The agency certainly could have relied on Block's expert opinion that increased erosion and sedimentation would have resulted from the plaintiffs' proposal and that adequate controls have not been specified by the plaintiffs. CT Page 4679
In order to approve an application to conduct regulated activities in wetland areas, the agency must find that a feasible and prudent alternative does not exist. General Statutes § 22a-41(b).A.D.A.M. Land Development Corporation v. ConservationCommission, 21 Conn. App. 122, 128-130 (1990). In its decision, the agency stated that the plaintiffs failed to present an adequate analysis of feasible and prudent alternatives. The record contains substantial evidence which reasonably supports a finding that the plaintiffs did not explore all feasible and prudent alternatives available to them.
In their initial site plan, the plaintiffs proposed to construct a single family house with a "footprint" of 2,050 square feet. Record item 9, letter dated March 20, 1992 from Environmental Design Associates, P.C. The agency through a letter from its director, Michael Aurelia, dated May, 19, 1992, asked the plaintiffs to supply additional information at the public hearing with respect to the feasible and prudent alternatives considered for the house. The agency specifically asked the plaintiffs to "consider alternate size, shapes and locations" Record item 23.
At the June 8, 1992 public hearing, the plaintiffs' expert D'Andrea testified that the plaintiffs were proposing a house with a footprint of approximately 2,000 square feet. Record item 33, p. 66. D'Andrea also presented to the agency sketches of four site plan alternatives that were considered by the plaintiffs. Record item 33, p. 79 and Record items 40-43. Alternative #1 showed a house with a 1,925 square feet footprint, alternative #2 showed a house with a 1,350 square feet footprint, alternative #3 showed a house with a 2,400 square feet footprint and alternative #4 showed a house with a 1,925 square feet footprint together with a revised lot line adding land from adjacent property owned by Ira Ellenthal to the subject property. Alternative #4 served as the basis for the initial site plan submitted to the agency. It is important to note that alternatives 1, 2 and 3 were rejected by the plaintiffs. They were not submitted to the agency for its consideration.
At the June 8, 1992 public hearing, agency member David J. O'Brian, and agency staff Russell Clifton suggested that the plaintiffs' experts consider constructing a house with a smaller footprint. Record item 33, p. 107-113. They also noted that the plaintiffs failed to consider a smaller house together with a revised property line. The speakers noted that these alternatives would result in less encroachment on wetlands or allow for a larger CT Page 4680 wetland buffer. Record item 33, pp. 108-112.
At the public hearing held on September 14, 1992, the plaintiffs submitted a revised site plan. The revised plan, however, did not alter the size of the house's footprint. Agency members again questioned the plaintiffs' experts as to whether alternatives were available such as reducing the size of the footprint. Record item 67, pp. 97, 102 and 134.
The plaintiffs submitted to the agency their final revised site plan, which is dated September 22, 1992, to the agency via a letter from D'Andrea dated September 24, 1992. D'Andrea's letter asserts that the plan "has been modified to present a smaller footprint". Record item 73. This statement, however, is not accurate. At the hearing held before this court on February 2, 1994, concerning the defendant commissioner Keeney's Motion to dismiss, D'Andrea testified that the size of the footprint did not change. Rather, the shape of the house had been shortened at the westerly end of the house. The overall size of the footprint remained the same in all one site plans submitted to the agency.
The burden of proof is on the plaintiffs to show that their proposed development is the only alternative that it is both feasible and prudent. Samperi v. Inland Wetlands Agency, 226 Conn. 579,593 (1993); Hoffman v. Inland Wetlands Commission, 28 Conn. App. 262,265 (1992). The record indicates that the plaintiffs did not meet their burden.
The plaintiffs argue that it is not feasible and prudent to construct a house with a smaller footprint. An alternative is feasible and prudent if it is sound from an engineering standpoint and economically reasonable in light of the social benefits derived from the activity. Samperi v. Inland wetlands Agency, supra, 226 Conn. 579. There is no evidence in the record which supports the position that a house with a smaller footprint would be engineeringly unsound or economically unreasonable. Rather, the evidence that is in the record suggests that a small house with a reduced footprint would be reasonable and prudent.
The plaintiffs proposed to construct a two story single family house with a footprint of approximately 2,000 square feet and an entire floor area of 3,500 to 4,000 square feet. Record item 33, pp. 66-67. This house was substantially larger than the average size house in the immediate area. The plaintiffs' expert D'Andrea testified at the June 8, 1992 public hearing that he looked at the CT Page 4681 tax assessor's records for thirteen houses in the immediate area and determined that the entire floor area for these houses ranged from 1,200 to 4,000 square feet. The average floor area was 2,560 sq.ft. Record item 33, p. 66. Since the plaintiffs were proposing to construct a two story house, a house with a footprint significantly less than 2,000 square feet could still meet or exceed the average entire floor area for houses in the surrounding neighborhood. The record before the agency contains no evidence to suggest that there exists peculiarities with respect to the subject, property which would preclude a smaller house similar to those in the immediate vicinity.
The plaintiffs also claim that they have been unlawfully, deprived of property without compensation in violation of article first, § 11 of the constitution of Connecticut. On November 22, 1993, the defendant commissioner of environmental protection filed a motion to dismiss the plaintiffs unconstitutional takings claim on the grounds that the defendant agency has not acted with requisite finality as to plaintiffs' property. The court held a hearing on the motion to dismiss over the course of three days: February 2, 1994, February 16, 1994 and February 17, 1994. The court hereby grants the defendant commissioner's motion and dismisses the plaintiffs' claim of an unconstitutional taking.
A reviewing court lacks jurisdiction to rule on a claim of unconstitutional taking where a property owner has not obtained a final decision from the administrative agency. Port ClintonAssociates v. Board of Selectmen, 217 Conn. 588, 604 (1991). The plaintiffs bear the burden of proving finality. To do so, they must show that the agency will not allow any reasonable use of their property. Gill v. Inland Wetlands and Watercourses Agency,219 Conn. 404, 415 (1991). For the same reasons that the plaintiffs have failed to prove no feasible and prudent alternative exists, they have failed to show that the defendant agency has made a final decision with respect to their application.
Throughout the extensive application process, the agency has indicated that it would entertain a proposal calling for construction of a house with a smaller footprint. The agency's letter dated May 19, 1992, sent by its staff and comments by agency members and staff at both public hearings urged the plaintiffs to consider a smaller house. See Record items 23, 33 and 67. Despite the agency's clear message that it would be more receptive to a proposal with a smaller house, the plaintiffs failed to change the overall size of their proposed house in any of the three site plans CT Page 4682 they submitted to the agency.[12]
The agency's desire to see a site plan proposing a house with a smaller footprint was not an unreasonable one. The plaintiffs' expert D'Andrea testified that the average size house in the immediate area of the subject property was significantly smaller than that proposed by the plaintiffs. D'Andrea also testified at the hearing on the motion to dismiss that a house with a smaller footprint could be built on the subject property and such a house would encroach less on the property's wetlands.[13] Michael Aurelia, the defendants' expert, similarly testified at the motion to dismiss hearing that a house with a small footprint would result in less encroachment on the wetlands on the subject property.
There was also evidence presented at the hearing before this court on the motion to dismiss that there may be other steps that the plaintiffs could take to reduce the impact on the wetlands, such as moving the northerly setback line and forsaking an attached garage for a detached garage. Based on the record before it, this court cannot say that the agency would not allow any reasonable use of the subject property. It may very well be that the agency would have approved a more modest proposal, especially one proposing a smaller house with a reduced footprint encroaching less on the eastern wetlands.[14] See Gill v. Inland Wetlands and WatercoursesAgency, supra, 219 Conn. 416.
The plaintiffs have submitted only one application to the agency. Given that their property contains wetlands, the plaintiffs should have expected that "development would be difficult and repeated applications would be necessary before the agency would approve an application for a building permit." Gillv. Inland Wetlands and Watercourses Agency, supra.
The plaintiffs have failed to demonstrate that the agency's decision is a final one. Accordingly, the plaintiffs' claim that their property was taken unconstitutionally is dismissed.
The record contains substantial evidence that reasonably supports the agency's decision denying a wetlands permit. The plaintiffs' appeal of that decision is also dismissed.
JON M. ALANDER, JUDGE