PAIGE L. HILAND ET AL. *v.* HOWARD S. IVES, HIGHWAY COMMISSIONER, ET AL.

SUPERIOR COURT     NEW HAVEN COUNTY     FILE No. 110648
AT NEW HAVEN

Memorandum filed August 23, 1966

*Gumbart, Corbin, Tyler & Cooper,* of New Haven, for the plaintiffs.

*Jack Rubin,* assistant attorney general, for the named defendant.

*Robert G. Zanesky,* assistant attorney general, for the defendant attorney general.

PARSKEY, J. This is an action brought in two counts by the plaintiffs, in the first count as residents and taxpayers of the state of Connecticut and city of Meriden, in the second count as property owners, seeking to enjoin the state highway commissioner from taking for the layout of a trunk-line highway, for the relocation of U.S. route 6A, any land within the boundaries of Hubbard Park, a public park in the city of Meriden. In addition to the named defendant, the parties have stipulated that the attorney general be made a party defendant to represent the public interest in the park property pursuant to § 3-125 of the General Statutes. The issues presented by the present action are (1) whether the plaintiffs, or any of them, have standing to sue and (2) whether the state, acting through its highway commissioner, can take, by eminent domain, any portion of a municipal park without special legislative authorization.[1]

Between 1898 and 1901, the lands known as Hubbard Park were conveyed to the city of Meriden to be used as a public park, and they were accepted by the city for that purpose. On February 21, 1899, the General Assembly passed a special act (13 Spec. Laws 5) authorizing the city of Meriden to hold these lands as a public park. Thereafter, the defendant highway commissioner decided to relocate U.S. route 6A, as a four-lane divided highway, through a portion of this park. In 1959, the highway commissioner held a public hearing on the proposed alignment. In 1965, the General Assembly appropriated funds for the construction of the road and also passed Public Act No. 609, now General Statutes (Rev. to 1966) § 7-131j. This act required new public hearings on highway projects which would require

---

[1] The opinion in an appeal in this case involving the second issue appears in 154 Conn. 683.

a taking of land "restricted to conservation or recreation use in accordance with an established open space program." Thereafter, two more public hearings were held on the proposed alignment, on March 10 and 21, 1966. Objections were voiced, but the defendant highway commissioner decided not to alter his plans. On April 4, 1966, the Meriden court of common council approved the proposed taking. On May 25, 1966, the present suit was instituted.

## STANDING TO SUE

Standing is the legal right to set judicial machinery in motion. One cannot rightfully invoke the jurisdiction of the court unless he has, in an individual or representative capacity, some real interest in the cause of action, or a legal or equitable right, title or interest in the cause of action, or a legal or equitable right, title or interest in the subject matter of the controversy. 39 Am. Jur., Parties, § 10. He must show that the purpose of the action is to obtain redress for an injury he has suffered or to prevent an injury he may suffer. *Waterbury Trust Co.* v. *Porter,* 130 Conn. 494, 498. He must show "something more than is comprised in the most ardent wish or partial feeling." *Crocker* v. *Higgins,* 7 Conn. 342, 346. In the absence of statute, to require a court to intervene in a controversy the challenged action not only must affect the legal interests of a person but must do so with sufficient directness. *Joint Anti-Fascist Refugee Committee* v. *McGrath,* 341 U.S. 123, 152 (concurring opinion of Frankfurter, J.).

## STANDING OF PLAINTIFFS AS TAXPAYERS

A taxpayer has standing only if the threatened action would result directly or indirectly in an increase in taxes or would in some other fashion cause him irreparable injury. *Austin* v. *Housing*

*Authority,* 143 Conn. 338, 349. It is not enough that he qualify as a taxpayer; he must go further. *Bassett* v. *Desmond,* 140 Conn. 426, 430. Nor is it sufficient for him to show that the alleged conduct is illegal unless he can also show that the illegal conduct has caused or will cause him a pecuniary or other direct loss as a taxpayer. *Cassidy* v. *Waterbury,* 130 Conn. 237, 245. Applying these principles to the present case, the plaintiffs have not shown how their taxes would be affected adversely by the proposed taking. The plaintiffs do not question the right of the highway commissioner to construct the proposed highway. Their grievance is that he should not use Hubbard Park for this purpose. If he had to bypass the park, the cost to the state and, therefore, to the plaintiffs as taxpayers might be greater. In any event, the plaintiffs offered no evidence tending to show that the construction of the highway through Hubbard Park would be more costly. Nor have the plaintiffs shown any other irreparable injury to themselves as taxpayers. *McGee* v. *Dunnigan,* 138 Conn. 263, 266, 269; see, for an example of such injury, *Charter Oak Council, Inc.* v. *New Hartford,* 121 Conn. 466, 475.

### STANDING OF PLAINTIFFS AS RESIDENTS AND PARK USERS

As residents of the city of Meriden and as users of Hubbard Park the plaintiffs exercise rights in common with members of the general public. Although it is clear that the removal of forty-seven acres of parkland for highway purposes and the construction of U.S. route 6A through Hubbard Park will impair substantially the use of this park by the plaintiffs, the injury thus sustained differs only in degree from that done to the public at large. In the ordinary case, this sort of injury would not be sufficient to give the plaintiffs standing to seek

injunctive relief. *Truesdale* v. *Greenwich,* 116 Conn. 426, 431; *Taylor* v. *Cooke,* 113 Conn. 162, 165. In recent years, courts have begun to reexamine the rationale of this rule in cases involving noneconomic injury. See, for example, *Scenic Hudson Preservation Conference* v. *Federal Power Commission,* 354 F.2d 608, 615. Be that as it may, the rule is one of judicial convenience designed to prevent the courts from being overrun by self-appointed protectors of the public interest. It is predicated on the assumption that the interest of the public will be protected by the public authorities designated for that purpose. In this case this assumption is in reality a trompe-l'oeil. The attorney general, having considered the conflict between the authority of the highway commissioner under his general powers of eminent domain and the state's policy in favor of the preservation of parkland created as a charitable trust and having concluded that the authority of the highway commissioner is paramount, could not be expected to take a contrary position. The city of Meriden, acting through its city council, having approved the diversion of parkland for state highway purposes, could not be expected to question the authority of the highway commissioner. Under these circumstances, the plaintiffs should not be denied the right to advance their own cause even though at the same time they may be seeking to redress a public injury.

### Standing of Plaintiffs as Property Owners

In the second count of the complaint, the plaintiffs claim standing as owners of real estate whose value is claimed to be greatly impaired by the proposed highway. Since the parties have stipulated that the properties of the plaintiffs Hiland and Lowe will not be damaged as a result of the proposed highway, the only question of standing in this count concerns

the plaintiff Macri. The proposed highway is to be located some 140 feet from the Macri home. The Macri home has a fair market value of $22,500. The construction of the highway in question will adversely affect the market value by about 20 percent. A reduction of this magnitude is substantial. The plaintiff Macri has standing to sue under this count.

[Remainder of opinion omitted.]