[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION RE: MOTION TO DISMISS
This lawsuit arises from a subcontract between the named plaintiff (CECI) and the defendant general contractor, Cristwood Contracting, Inc. (Cristwood). The plaintiff was a closely held corporation whose owners were John and Christine Badera. Because Mrs. Badera was its principal shareholder, the company was certified by the Department of Economic Development as a minority (female) owned contractor eligible for work on designated State of Connecticut projects. CT Page 4398
The above referenced contract was entered into on June 24, 1994. Pursuant thereto the plaintiff was to provide construction services at a site known as the Litchfield Salt Shed. The plaintiff abandoned its contract and stopped work after about two months on the site. It alleges in its amended complaint, dated December 31, 1997, that the defendant-Cristwood breached the contract by failing to pay for construction services provided before abandonment.
To the above Cristwood denies a breach and asserts that it was required to hire other contractors to complete CECI's work at a cost of more than $200,000 in excess of the amount CECI would have received had it successfully completed its contract.
The defendant Cristwood, although represented by counsel, did not appear on the date trial was to begin. A representative of the company who was present confirmed that his company would not offer evidence or otherwise participate in defense of the complaint. The court, pursuant to the plaintiff's oral motion, defaulted the defendant by virtue of its failure to appear for trial.
A co-defendant in the action, United States Fidelity and Guaranty Company (USFG) is surety on a performance and payment bond which it issued to Cristwood as principal, all in connection with the above described construction project. The plaintiff, based on Cristwood's default, seeks recovery against USFG on its surety bond and under the authority of § 49-42 of the Connecticut General Statutes.
Based on a pretrial chambers conference with counsel, the court deemed it, necessary to consider USFG's motion to dismiss the complaint. Its motion is based on the ground that CECI lacks the necessary capacity, i.e., standing, to pursue its claim. A hearing was held on the motion and the plaintiff's objection thereto, and testimonial and documentary evidence were received.
Standing implicates a court's subject matter jurisdiction, and it may be raised at any point in a judicial proceeding.Stamford Hospital v. Vega, 236 Conn. 646, 656 (1996). More particularly, standing is defined as follows:
 Standing is the legal right to set judicial machinery in motion. One cannot rightfully invoke the jurisdiction of the court unless [one] has, in an individual or representative capacity, some real CT Page 4399 interest in the cause of action, or a legal or equitable right, title or interest in the subject matter of the controversy. Hiland v. Ives, 28 Conn. Sup. 243, 245, 257 A.2d 822 (1966). Ardmare Construction Co. v. Freedman, 191 Conn. 497, 501 (1983).
 A.
Based on the evidence received during the hearing on USFG's motion, the following facts are found:
 (1) CECI's representation that it was a legally existing female owned corporation was a major factor in the award of its subcontract.
 (2) Cristwood almost certainly would not have awarded the subcontract to an unincorporated individual or individuals.
 (3) CECI, as a de jure corporate entity, was created in 1987, and, on March 30, 1990, was dissolved by forfeiture.
 (4) The dissolution of CECI, as ordered by the Secretary of the State, occurred more than four years before the contract sued upon was executed and more than five years before this lawsuit was instituted.
 (5) CECI took no action within the prescribed three-year time limitation to reinstate its legal corporate status. § 33-388, Conn. Gen. Stat., Rev. to 1997; now § 33-892
(P.A. 96-771); and no steps have been taken since then.
 (6) After dissolution CECI never filed a State of Connecticut tax return, although on September 13, 1993, it did apply for a federal employer identification number, and, on March 13, 1994, it filed a U.S. Corporate Tax Return, as to which no tax was due or paid.
 (7) Counsel for CECI, on June 8, 1995, filed a motion to substitute John Badera and Christine Badera as plaintiffs in the instant action.[1] The motion which was granted (Pickett, J.) recites that "[t]he corporate entity currently named as plaintiff . . . was dissolved on March 30, 1990. The individuals were the sole officers and shareholders of said corporation. Therefore, this litigation should properly have been commenced naming the a forestated individuals as plaintiffs." CT Page 4400
 (8) Mr. Badera claims to have been unaware of CECI's dissolution until November 1997.
 B.
Pursuant to § 33-387 of our General Statutes (Rev. To 1997), now § 33-890 (P.A. 96-971), the Secretary of the State upon filing a certificate of dissolution, is required to give notice thereof to the dissolved corporation by registered or certified mail addressed to the corporation's principal address. The statute provides, further, that notice of dissolution shall be published in successive issues of the Connecticut Law Journal. No probative evidence was offered as to why the plaintiff corporation did not receive the required notice.
Even if Mr. Badera as one of only two principals of the corporation did not receive such notice, his claim that he was unaware of the 1990 dissolution until barely a few months ago strains all measure of credulity. His purported ignorance of the corporation's status until this past November is particularly suspect in the face of his attorney's 1995 motion to substitute him and Mrs. Badera as party plaintiffs herein. This pleading cites the 1990 dissolution as compelling reason to make the substitution, and the court granted the motion.
What is patently clear is that at no time has CECI made a good faith effort toward reinstatement. Cf, Clark-Franklin-KingstonPress, Inc. v. Romano, 12 Conn. App. 121, 127-28 (1987). While it may be argued that such failure supports the plaintiff's claim that it was ignorant of the corporate forfeiture, the court deems a more likely inference to be the plaintiff's wish to avoid the costs and penalties incident to reinstatement.
It is the court's finding that CECI, acting through one or both of its principals, knowingly misled Cristwood as to its (CECI's) status in order to secure the subcontract, as to which only a viable corporation would have been eligible.
 C.
The plaintiff argues that, whatever the basis, both parties to the action acted as though a legal corporate entity existed,[2]
and, therefore, the plaintiff was a de facto corporation. "A de facto corporation is . . . an association which actually CT Page 4401 exists for all practical purposes as a corporate body, but which, because of failure to comply with some provision of law has no legal right to corporate existence . . . ." DiFrancesco v.Kennedy, 114 Conn. 681, 687-88 (1932). "Generally, one who has dealt with either a de facto or a de jure corporation is estopped to deny its corporate existence." Balance Rock CondominiumAssociation v. Pinarer, 10 CONN. L. RPTR. 338, 339 (November 3, 1993).
Historically, a dissolved corporation was to all intents and purposes non-existent:
 At common law, the dissolution of a corporation was treated like the death of a natural person: Once it has dissolved, a corporation ceased to exist and could not sue or be sued, and any action pending against it abated. Oklahoma Gas Co. v. Oklahoma, 273 U.S. 257, 259 47 S.Ct. 391, 71 L.Ed. 634 (1927).
 Penasquitos. Inc. v. Superior Court of San Diego County,812 P.2d 154, 156 (Cal. 1991).
Today, however, the dissolved corporation is generally vested with a degree of life in the context of permitted activity:
 [Today], the effect of dissolution is not so much a change in the corporation's status as a change in its permitted scope of activity . . . . Thus, a corporation's dissolution is best understood not as its death, but merely as its retirement from active business.
Id. 160.
In the above connection § 33-378 of the General Statutes, now § 33-884 (P.A. 96-271), while providing [sub-para. (a)] that "[d]issolution terminates the corporate existence of the dissolved corporation," authorizes [sub-para. (e)] the dissolved corporation to prosecute or defend any action or proceeding by or against it in its corporate name.
While at first blush it might seem that the plaintiff, if it is a de facto corporation, has legal capacity to bring the instant action, the court is persuaded that such authority is subject to the constraints and limitations of sub-paragraph (b):
 A dissolved corporation shall cease to carry on its business and shall do only such acts as are necessary or expedient to . . . wind up its business and affairs as expeditiously as practicable, and for such purpose it shall CT Page 4402 continue as a corporation.
(Emphasis added). Sec. 33-378, Conn. Gen. Stat., Rev. to 1997.
Clearly, the power of the de facto corporation is confined to the parameters of an expeditious windup of its business, and it is for this purpose only that it is permitted to act in such capacity. "It cannot carry on new business." (Emphasis added).Goldfield Mines. Inc. v. Hand, 711 P.2d 637, 642 (Ariz.App. 1985). It is ludicrous to assume that even a de facto corporation, such as CECI claims to have been, would be permitted long after dissolution and with impunity to conduct business as usual; a fortiori, to sue on a cause of action which did not even accrue until a still later date after dissolution. Cf. Campisanov. Nardi, 212 Conn. 282. 290-91 (1989).
 D.
For the reasons stated above, it is the court's conclusion that the plaintiff lacked the required standing and capacity to bring the instant action, and, accordingly, the co-defendant USFG's motion to dismiss is granted.
GAFFNEY J.