[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
In a revised complaint, filed on February 28, 2000, the plaintiff, Dr. Robert Daly, seeks an injunction prohibiting and restraining the defendant, the town of Windham, from selling land known as 302 and 304 North Street, Willimantic. The prayer for relief also requests undefined damages. Dr. Daly testified, however, that he seeks no monetary damages in this case, and that he incurred no expenses or costs.
The relevant facts alleged in the complaint are as follows. Dr. Daly is a citizen, taxpayer and voter of the town of Windham. The town owns property, currently known as 302 and 304 North Street, Willimantic, which it acquired by condemnation for school grounds some number of years ago. In November 1998, the town decided to sell this land. In May 1999, the town, acting through its engineer, contacted local realtors by means of a form letter to ascertain their interest in listing the land for sale. Legal notices were placed in the local paper. Four bids for the properties were received On September 21, 1999, the town held a special town meeting to vote on the sale of this land to the two bidders whose bids yielded the greatest revenue to the town.
Dr. Daly then alleges that these actions violated the town's subdivision regulations, state law and the rights of the citizens of the town. Specifically, he alleges a violation of the state constitution and a violation of General Statutes §§ 8-25, 8-26 and 8-28. He also alleges that the town failed to comply with its subdivision regulations, failed to comply with its plan of development, failed to hold an open bid on the land, failed to get the best price for the land, failed to provide notice of its intention to subdivide and sell the land, failed to develop a policy to identify land that should be sold, failed to consider traffic, flooding and aesthetic concerns related to this land, and failed to notify persons that use this land of its contemplated sale.
Dr. Daly then alleges that he was deprived of the right to pass over this land, which he has used for more then fifteen years, and he was deprived of an opportunity to buy the land. He further alleges that his property value will be diminished because of increased traffic, flood waters and population density, and that the quality of life in his neighborhood will be diminished. Finally, the plaintiff alleges that the sale of this land does not satisfy any municipal public use or purpose.
On November 12, 1999, the town moved to dismiss on the ground that the CT Page 339 court lacked subject matter jurisdiction because: (1) Dr. Daly lacked standing due to his inability to allege or show injury; (2) Dr. Daly lacked standing due to his failure to allege and show fraud or corruption on the part of the municipality; and (3) Dr. Daly failed to exhaust administrative remedies. On December 6, 1999, the court, Sferrazza, J., without a written memorandum of decision, denied the motion. The case was tried before this court on November 22, 2000.
 I. STANDING
The town has continued to raise the issue of standing, pretrial and at trial. Before ruling on the ultimate question, the court must first determine whether Dr. Daly does, in fact, have standing to bring this action. "Standing is the legal right to set judicial machinery in motion." Sadloski v. Manchester, 228 Conn. 79, 84, 634 A.2d 888 (1993) (Sadloski I). "[I]n the absence of standing, the court lacks subject matter jurisdiction to determine the merits of the case." Id., 83. "A possible absence of subject matter jurisdiction must be addressed and decided whenever the issue is raised." Id., 84.
The plaintiff alleges that he is a voter and a resident taxpayer of the town. The initial question is whether being a voter and a taxpayer, alone, satisfies the requirements for standing. To have standing as an elector, the plaintiff's right to vote must be implicated. See WindhamTaxpayers Assn. v. Board of Selectmen, 234 Conn. 513, 526, 662 A.2d 1281
(1995). The plaintiff does not claim that he was denied the right to vote at the town meeting. In a pretrial memorandum, filed the morning of the trial, however, Dr. Daly raised the argument that the town meeting was not properly noticed in compliance with General Statutes § 7-3
because the first selectman was the only selectman to sign the warning.
General Statutes § 7-3 provides, in part: "The warning of each town meeting . . . shall specify the objects for which such meeting is to be held. Notice of a town meeting shall be given by posting, upon a signpost or other exterior place near the office of the town clerk . . . a printed or written warning signed by the selectmen, or a majority of them, and by publishing a like warning in a newspaper published in such town or having-a circulation therein. . . ."
On September 7, 1999, the board of selectmen voted unanimously to hold a special town meeting to vote on the sale of the North Street property. (Minutes, September 7, 1999 Board of Selectmen Meeting.) Notice of this meeting was published in the Willimantic Chronicle on September 13, 1999. (Joint Exhibit 17.) Notice was also set upon a signpost or other exterior place nearest the office of the town clerk as certified by the first selectman. (Joint Exhibit 16.) The notice described the parcels to CT Page 340 be sold and directed interested parties that a subdivision plan was on file in the town clerk's office. (Joint Exhibits 16 and 17.) In his memorandum, Dr. Daly argues that this notice was insufficient because only the first selectman, and not all or most of the selectmen, signed it. He does not, however, claim that he was prejudiced by the lack of signatures.
"[T]he use of the word shall, though significant, does not invariably establish a mandatory duty." State v. Pare, 253 Conn. 611, 623,755 A.2d 180 (2000). "The test to be applied in determining whether a statute is mandatory or directory is whether the prescribed mode of action is the essence of the thing to be accomplished, or in other words, whether it relates to a matter of substance or a matter of convenience. . . . If it is a matter of substance, the statutory provision is mandatory. If, however, the legislative provision is designed to secure order, system and dispatch in the proceedings, it is generally held to be directory, especially where the requirement is stated in affirmative terms unaccompanied by negative words." (Internal quotation marks omitted.) State v. Murray, 254 Conn. 472, 489, 757 A.2d 1083
(2000). "Stated another way, language is deemed to be mandatory if the mode of action is of the essence of the purpose to be accomplished by the statute . . . but will be considered directory if the failure to comply with the requirement does not compromise the purpose of the statute." (Citation omitted.) Angelsea Productions, Inc. v. Commission on HumanRights Opportunities, 236 Conn. 681, 690, 674 A.2d 1300 (1996).
"The purpose of the required notice [in General Statutes § 7-3] is to apprise the voters of the nature and the character of the action that is being proposed." Welles v. East Windsor, 185 Conn. 556, 559,441 A.2d 174 (1981). "[Where the] real object for which [a] meeting was called was not left in doubt, and the warning was sufficient to inform the voters of what was fairly intended to be the business of the meeting . . . [such] warning was sufficient to comply with what is now General Statutes § 7-3." (Citation omitted.) Jensen's Inc. v. Killingworth,152 Conn. 237, 242, 206 A.2d 114 (1964).
Dr. Daly argues that the posted notice lacked the signatures of all of the selectmen. Although General Statutes § 7-3 states that all of the selectmen or a majority of them shall sign the notice, this requirement does not go to the essence of the thing to be accomplished because it does not implicate whether the notice was sufficient to inform the voters of the nature of the proposed action that was the business of the meeting. See Welles v. East Windsor, supra, 185 Conn. 559; Jensen's Inc.v. Killingworth, supra, 152 Conn. 242. The purpose of General Statutes § 7-3 was not thwarted when, after a unanimous decision by the board of selectmen to hold a special town meeting, only the first selectman CT Page 341 signed the notice. The required warning of the meeting was properly published in the town newspaper and was properly posted on an exterior place. The notice described the parcels to be sold and directed interested parties that a subdivision plan was on file in the town clerk's office. Accordingly, such warning was sufficient to comply with General Statutes § 7-3, and Dr. Daly's rights as a voter were not implicated.
As to Dr. Daly's status as a taxpayer, as explained in Sadloski I, supra, "[t]he plaintiff's [alleged] status as a taxpayer does not automatically give [him] standing to challenge alleged improprieties in the conduct of the defendant town. . . . The plaintiff must also allegeand demonstrate that the allegedly improper municipal conduct [caused him] to suffer some pecuniary or other great injury." (Citations omitted; emphasis added; internal quotation marks omitted.) Sadloski I, supra, 228 Conn. 83. It is insufficient "for [the plaintiff] to show that the alleged conduct is illegal unless he can also show that the illegal conduct has caused or will cause him a pecuniary or other direct loss asa taxpayer." (Emphasis added.) Hiland v. Ives, 28 Conn. Sup. 243, 246,257 A.2d 822 (1966). "One cannot rightfully invoke the jurisdiction of the court unless he . . . has, in an individual or representative capacity, some real interest in the cause of action, or a legal or equitable right, title or interest in the subject matter of the controversy." Sadloski I, supra, 228 Conn. 84.
The town argues that Dr. Daly does not have standing to bring this action because he has not proven that he is a town taxpayer. In support of this argument, the town points to Dr. Daly's deposition and his trial testimony where he admitted that, several years ago, he transferred all of his interest in his home to his wife. The town also argues that Dr. Daly's I testimony proves that he suffered no financial or pecuniary loss because of the town's sale of this land. Dr. Daly argues that the court's previous denial of the town's motion to dismiss is binding.
Although the court, Sferrazza, J., denied the town's earlier motion to dismiss, "[w]here a matter has previously been ruled upon interlocutorily, the court in a subsequent proceeding in the case may treat that decision as the law of the case, if it is of the opinion that the issue was correctly decided, in the absence of some new or overriding circumstance." (Internal quotation marks omitted.) Carothers v.Capozziello 215 Conn. 82, 107, 574 A.2d 1268 (1990). "Nevertheless, if the case comes before him regularly and he becomes convinced that the view of the law previously applied . . . was clearly erroneous and would work a manifest injustice if followed, he may apply his own judgment." (Internal quotation marks omitted.) State v. Arena, 235 Conn. 67, 80,663 A.2d 972 (1995). CT Page 342
At the time of the previous ruling, the court, Sferrazza, J., accepted as true the allegations of the complaint. See Pamela B. v. Ment,244 Conn. 296, 308, 709 A.2d 1089 (1998) ("[i]n ruling upon whether a complaint survives a motion to dismiss, a court must take the facts to be those alleged in the complaint, including those facts necessarily implied from the allegations, construing them in a manner most favorable to the pleader"). Accordingly, the court accepted, as fact, that Dr. Daly was a taxpayer in the defendant town. Through the evidence obtained at trial, it has been proven that Dr. Daly transferred his interest in his home to his wife several years ago and offered no other evidence to satisfy the court that he is a taxpayer of the municipality. As explained in Fishmanv. West Hartford Zoning Board of Appeals, Superior Court, judicial district of New Britain at New Britain, Docket No. 492265 (March 18, 1999, McWeeny, J.) (24 Conn.L.Rptr. 265), the definition of "taxpayer" does not include the spouse of a taxpayer, even if that spouse provides the funds to pay the taxes. Additionally, "[p]laintiff's are not fungible, even if they . . . have similar interests. The general rule is that one party has no standing to raise another's rights." Sadloski v.Manchester, 235 Conn. 637, 643, 668 A.2d 1314 (1995) (Sadloski II).
Dr. Daly has offered no proof that he actually owns any property within the town to substantiate his allegation that he is, in fact, a taxpayer in the town. Further, Dr. Daly has made no showing that he has suffered any pecuniary or monetary losses because of the town's sale of its property. Although he claims that "his" property value may diminish or the town may have lost revenue by not getting more for the property, he does not own the property which he claims may diminish in value, and he has not given any evidence that the town could have received more money for this property or that this alleged lost revenue would affect him as a taxpayer. Accordingly, Dr. Daly has failed to prove that he has standing to pursue this case.
Even if the court were to find that Dr. Daly was a taxpayer of the town, he would not have automatic standing because he has not demonstrated some pecuniary or other great injury. The plaintiff, inSadloski II, supra, claimed that he was damaged because his taxes would increase due to the loss of tax revenue to the town because of a sale of land with a tax abatement given to the purchaser. See id., 646-47. The court held that this alleged harm was insufficient to give the plaintiff standing because the plaintiff did not prove that the land would have sold and provided an increase in revenue without the abatement. See id., 648-49. The court concluded that "the relevant comparison for purposes of inferring probable taxpayer injury is between the net economic benefit to the town with the development project and the tax revenue of the town without the project." Id., 649. Similarly, Dr. Daly has not proven that the property could have been sold for more money or that the net economic CT Page 343 benefit to the town with the sale of this property outweighs the tax revenue the town would have generated from the property without the sale. Accordingly, even if the court were to find that Dr. Daly was a town taxpayer, he has failed to prove that he has standing to proceed in this case.
 II. INJUNCTIVE RELIEF
Dr. Daly further alleges that the actions of the selectmen violated the town's subdivision regulations, state law and the rights of the citizens of the town. Specifically, he alleges a violation of the state constitution and a violation of General Statutes §§ 8-25, 8-26 and 8-28. He also alleges that the town failed to comply with its subdivision regulations, failed to comply with its plan of development, failed to hold an open bid on the land, failed to get the best price for the land, failed to provide notice of its intention to subdivide and sell the land, failed to develop a policy to identify land that should be sold, failed to consider traffic, flooding and aesthetic concerns related to this land, and failed to notify persons that use this land of its contemplated sale. Daley seeks injunctive relief, negating the sale of the town property.
"A party seeking injunctive relief has the burden of alleging and proving irreparable harm and lack of an adequate remedy at law." Scintov. Sosin, 51 Conn. App. 222, 245, 721 A.2d 552 (1998), cert. denied247 Conn. 963, 724 A.2d 1125 (1999). In considering such relief, the court looks to the following four factors: (1) whether the plaintiff would suffer irreparable harm without the injunctive relief; (2) whether the plaintiff has an adequate remedy at law; (3) whether the plaintiff has a reasonable probability of success on the merits; and (4) whether a balancing of the equities falls in favor of the plaintiff. See GriffinHosptial v. Commission of Hospitals, 196 Conn. 451, 457-59, 493 A.2d 229
(1985).
The only claims that Dr. Daly makes as to harm are that he will no longer be able to cross over or use this town land and that he was deprived of the opportunity to purchase it. He also claims that his property value will be diminished because of increased traffic, flood waters and population density, and that the quality of life in his neighborhood will be diminished. Any claim as to the possible diminution of the value or quality of his land is moot; Dr. Daly does not own the land; his wife owns it. "[O]ne party has no standing to raise another's rights." Sadloski II, supra, 235 Conn. 643. Further, even if Dr. Daly could raise this issue, he offers no evidence that his wife's property value would decrease. Actually, quite the opposite is true; in his deposition and at trial, Dr. Daly testified that he didn't know if the CT Page 344 value of the property would increase or decrease upon the sale of this land. He submitted no appraisal and offered no expert testimony on the value of his property or the value of the town's property. Further, on cross examination Dr. Daly testified that he suffered no pecuniary or monetary loss due to the sale of this land. Also, despite his claim that he was denied the opportunity to bid on this land, he also offered no testimony, nor proof; that he would have, in fact, purchased the land had he been afforded the opportunity.
As to the harm Dr. Daly may suffer because he will be unable to cross over or otherwise use the land, which he claims to have used for more than fifteen years, "property that is held in fee simple ownership by municipalities must be presumed to be held for public use." AmericanTrading Real Estate Properities, Inc., v. Trumbull, 215 Conn. 68, 80,574 A.2d 796 (1990). As the town correctly points out, Dr. Daly has no prescriptive right to use this land. If Dr. Daly is seeking to make an adverse possession claim by alleging that he has used this property for more than fifteen years, combined with his claim that the sale of the property was not for public use, he bears the burden of rebutting the presumption that this land was, in fact, held for public use. See id. Furthermore, to be successful in an adverse possession claim, Dr. Daly must allege and prove all of the elements of adverse possession. See id. "The essential elements of adverse possession are that the owner shall be ousted from possession and kept out uninterruptedly for fifteen years under a claim of right by an open, visible and exclusive possession of the claimant without license or consent of the owner." (Emphasis added; internal quotation marks and citations omitted). Kramer v. Petisi,53 Conn. App. 62, 67, 728 A.2d 1097, cert. denied, 249 Conn. 919,733 A.2d 229 (1999). Adverse possession must be proved by clear and convincing evidence. See id.
Not only does Dr. Daly admit that many people use this land, in his deposition, Exhibit # 19, Dr. Daly states that the town cleaned up much of the debris on this land just three years ago. (Deposition, p. 18.) In addition, the plaintiff's claim that the sale of this land is not for a public use or purpose is incorrect. The sale of this land will generate revenue for the town both from the sale, itself, and from future property taxes assessed to the land and any improvements thereto. "[T]axes are the life-blood of government, and their prompt and certain availability an imperious need." Bull v. United States, 295 U.S. 247, 259, 55 S.Ct. 695,79 L.Ed. 1421 (1935).
Accordingly, the plaintiff has not proven that he has standing to sue nor has he proven that he would suffer irreparable harm, which would warrant the granting of injunctive relief. The application for injunction is denied. The lis pendens is ordered discharged. CT Page 345
Foley, J.